331 A.2d 189
**COMMONWEALTH of Pennsylvania**
v.
**Christopher JACKSON, Appellant
(two cases).**

Supreme Court of Pennsylvania.
Argued Nov. 25, 1974.
Decided Jan. 27, 1975.
Rehearing Denied Feb. 7, 1975.

670

Jerome E. Bogutz, Philadelphia, for appellant.

F. Emmett Fitzpatrick, Dist. Atty., Richard A. Sprague, First Asst. Dist. Atty., Steven H. Goldblatt, Asst. Dist. Atty., Chief, Appeals Division, John H. Isom, Carolyn Temin, Asst. Dist. Attys., Abraham J. Gafni, Deputy Dist. Atty. for Law, Philadelphia, for appellee.

Before JONES, C. J., and O'BRIEN, ROBERTS, POMEROY, NIX and MANDERINO, JJ.

## OPINION OF THE COURT

JONES, Chief Justice.

Appellant, Christopher Jackson, was indicted for murder, aggravated robbery, conspiracy and carrying a con-

cealed deadly weapon. Pre-trial motions to suppress appellant's statements were unsuccessful, and, after a trial by jury, appellant was found guilty of murder in the first degree and aggravated robbery. Post-trial motions in arrest of judgment and for a new trial were filed and denied, and appellant was sentenced to concurrent terms of imprisonment for life and from five to ten years. From those sentences these appeals followed.[1] We reverse.

At approximately 9:30 p.m. on July 11, 1972, Karl Klaiss, Sr., an off-duty railroad detective, was walking north on 56th Street in Philadelphia, Pennsylvania. As he neared the intersection of 56th and Ludlow Streets, two youths approached him from behind. Moments later one of the youths shot Mr. Klaiss four times. They then fled through a driveway that connected 56th Street with 57th Street. Coincidentally an off-duty policeman, standing one-half block away, and two officers in a patrolling police van, just entering 56th Street from Chestnut Street, heard the shots and watched the assailants flee. Two of these three policemen, Officers Pourran and Ricks, gave chase but were forced to abandon the footrace—one due to a chronic back injury and the other to render assistance to the victim.

From the officers' observations and that of two additional witnesses, a description of the assailants was flashed over the police radio. The suspects were described as two Negro males in dark clothing, 5'6" to 5'8" in height, with medium builds, medium to dark complexions and semi-bush haircuts.[2]

1.  Jurisdiction of the appeal of the conviction of murder is based on Section 202(1) of the Appellate Court Jurisdiction Act of 1970, 17 P.S. § 211.202(1). The appeal of the conviction of aggravated robbery was transferred to this Court after first being properly filed in the Superior Court. See Appellate Court Jurisdiction Act of 1970, Section 503(c), 17 P.S. § 211.503(c).

2.  Although some dispute exists as to the bases of this description, we have assumed for purposes of this opinion that it was founded on legally sufficient sources.

Approximately one hour and one block from the scene of the crime, Officer John Clinkscale, patrolling in a squad car, observed a black youth receiving money from an elderly man. The man was backing away and Officer Clinkscale suspected a robbery. He stopped his car, approached the pair and asked the man if anything was wrong. The man responded in the negative. Officer Clinkscale then noticed that the youth, the appellant herein, matched the physical description of the suspects to the slaying of the previous hour. Officer Clinkscale noted, however, that appellant wore light colored trousers and no shirt rather than the described dark clothing. Nonetheless, based on the remaining similarities, Clinkscale arrested the appellant.

After taking the appellant into custody, Clinkscale proceeded one-half block and arrested four other youths who also matched the description.[3] Appellant and the others arrested in connection with the slaying were taken to police headquarters. Appellant was placed in a detention room with the other suspects until the police commenced his interrogation approximately six hours after his arrest. Shortly thereafter appellant confessed.

Appellant raises several grounds for reversal, only one of which we need consider. He primarily contends that the arrest was without probable cause and that, therefore, his confession should have been suppressed as a product of the illegal arrest.

Any arrest must be based on probable cause U.S.Const. amend. iv; *McCray v. Illinois,* 386 U.S. 300, 87 S.Ct. 1056, 18 L.Ed.2d 62 (1966); *Ker v. California,* 374 U.S. 23, 83 S.Ct. 1623, 10 L.Ed.2d 726 (1963); *Commonwealth v. Jones,* Pa., 322 A.2d 119 (1974), and cases cited therein. In determining the presence of probable cause "[t]he crucial test is whether there were facts

---

**3.** In all, fifteen to twenty youths who matched the description were arrested within the first few hours after the slaying.

available at the time of the initial apprehension which would justify a man of reasonable caution in the belief that a crime had been committed and that the individual arrested was the probable perpetrator." *Commonwealth v. Jones,* 322 A.2d at 123 (citations omitted). We find the arrest here to be clearly without probable cause. The arresting officer had only a very sketchy description consisting of height, general build, hair length and complexion shade. That the description was equally applicable to a great many individuals in the area is demonstrated by the fact that moments later the same officer arrested four additional suspects in the same block in which appellant was seized.

The Commonwealth argues that probable cause for appellant's arrest *as a murder suspect* existed because the officer observed the appellant engaging in an apparent shakedown. Since the victim was also subjected to such a shakedown, the Commonwealth contends the arrest was justified by the combination of description and modus operandi. Nowhere, however, does the record of the trial reveal that the arresting officer was aware that the slaying occurred in the context of a robbery. The officer testified at both the trial and the suppression hearing that he initially stopped the appellant to investigate his suspicious activity, *as a separate and distinct occurrence.* Only after he had satisfied himself that nothing was amiss did he notice the appellant's similarity with the broadcast description. Since the facts known to the arresting officer "at the moment the arrest is made" determines the legality of the arrest, *Adams v. Williams,* 407 U.S. 143, 148, 92 S.Ct. 1921, 32 L.Ed.2d 612 (1972), probable cause in this case must rest solely on the very general description flashed over the police radio.

We have consistently held that descriptions equally applicable to large numbers of people will not support a finding of probable cause. *See Commonwealth*

*v. Berrios,* 437 Pa. 338, 263 A.2d 342 (1970) ; *Commonwealth v. Hicks,* 434 Pa. 153, 253 A.2d 276 (1969). This is especially so where the arrest occurs some time after the crime. Here, the identification of the appellant as a possible culprit was made at least forty minutes after the slaying. The very general nature of the description applicable to five individuals in a single residential block, to at least ten additional suspects actually arrested, and to a large proportion of the neighborhood residents cannot legally support an arrest made some time after the crime.[4] Hence, the arrest here was improper.

We now turn to the question of whether appellant's confession must be suppressed as a product of the illegal arrest. The Commonwealth rightfully argues that the confession need not be excluded if it is "purged of the primary taint." *Wong Sun v. United States,* 371 U.S. 471, 488, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963) (quoting Maguire, Evidence of Guilt, 221 (1959)) ; *Commonwealth v. Fogan,* 449 Pa. 552, 557, 296 A.2d 755 (1972) ; *Commonwealth v. Holton,* 432 Pa. 11, 247 A.2d 228 (1968). In support of this principle, the Commonwealth here seems to suggest that a lapse of time between arrest and interrogation and the recitation of *Miranda* warnings prior to interrogation sufficiently segregate the arrest from the confession.[5]

4. The facts surrounding this arrest also demand that we reiterate our condemnation of "dragnet" arrests. *Commonwealth v. Brown,* 451 Pa. 396, 301 A.2d 876 (1973); *Commonwealth v. Fogan,* 449 Pa. 552, 296 A.2d 755 (1972). The Commonwealth seems to maintain that the description supports a finding of probable cause even though the number of arrests which resulted gave the appearance of a dragnet. To justify an arrest, however, the Commonwealth must show the *likelihood* that the person arrested had committed or was committing a crime. If a description is so general that a great many people can be arrested on the basis of it alone, the limiting factor of likeliness is discarded and the standard becomes one of possibility rather than probability.

5. The trial court in its opinion accepted these propositions relying on *Commonwealth v. Fogan,* 449 Pa. 552, 296 A.2d 755 (1972), for authority. We find such reliance misplaced. In *Fogan,* the accused was undeniably arrested without probable cause. Several

■ Lapse of time in itself cannot make a confession independent of an illegal arrest. *See Commonwealth v. Bishop*, 425 Pa. 175, 183, 228 A.2d 661, 666 (1967). Were the law otherwise the Commonwealth could indiscriminately arrest an individual, hold him for a judicially prescribed length of time, and then proceed to interrogate him certain that any voluntary confession would be admissible. Of course, other factors can purge evidence of any prior illegality.[6] *Cf. Wong Sun v. United States, supra.* But delay suffered in a detention cell under the complete control of the police hardly creates such a combination of factors.

We have also clearly held that *Miranda* warnings, administered before an accused has confessed, cannot purge the statement of the taint of unconstitutional arrest. *Betrand Appeal*, 451 Pa. 381, 391–392, 303 A.2d 486, 491 (1973).

■ We find, therefore, the confession to be a fruit of the initial illegality, and as such should have been suppressed. Since the confession was the only evidence presented at trial which linked appellant to the slaying,

hours after arrest the police learned *from the victim* that the accused had, in fact, committed the crime in issue. Police then gave the accused his *Miranda* warnings, confronted him with the new information, and secured a confession. We held the confession admissible not because of the time delay and the recitation of *Miranda* rights but because of the vital information (which in itself would have supported a proper arrest) that the police uncovered independent·of the illegal arrest.

6. "There are two factors which seem to be of major significance in determining the relationship between an illegal arrest and, as here, the subsequent confession: (a) the proximity of an initial illegal custodial act to the procurement of the confession; and (b) the intervention of other circumstances subsequent to an illegal arrest *which provide a cause so unrelated to that initial illegality that the acquired evidence may not reasonably be said to have been directly derived from, and thereby tainted by, that illegal arrest.*" (Emphasis added) *Commonwealth ex rel. Craig v. Maroney*, 348 F.2d 22, 29, (3 Cir., 1965), quoted in *Commonwealth v. Bishop*, 425 Pa. 175, 183 n. 7, 228 A.2d 661, 666 n. 7 (1967). (*Bishop*, however, left open the question of purge by lapse of time alone).

its admission cannot be harmless. *Chapman v. California,* 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967); *Commonwealth v. Davis,* 452 Pa. 171, 177, 305 A.2d 715, 719 (1973); *Commonwealth v. Smith,* 449 Pa. 309, 310 n. 2, 297 A.2d 810, 811 n. 2 (1972).

Judgments reversed.

POMEROY, J., concurs in the result for the reasons set forth in his concurring opinion in *Betrand Appeal,* 451 Pa. 381, 303 A.2d 486 (1973).

EAGEN, J., did not participate in the consideration or decision of this case.