Accordingly, the judgment of the district court will be reversed and the case remanded for action consistent with this opinion.

UNITED STATES of America ex rel. Benjamin WRIGHT

v.

Julius T. CUYLER, Superintendent, Graterford State Prison,

The Commonwealth, Appellant.

No. 76–2553.

United States Court of Appeals, Third Circuit.

Argued Sept. 7, 1977.

Decided Oct. 6, 1977.

Mark Sendrow, Asst. Dist. Atty., Chief, Motions Div., Abraham J. Gafni, Deputy Dist. Atty., F. Emmett Fitzpatrick, Dist. Atty., Philadelphia, Pa., for appellant.

Stanley Bashman, Bashman, Bernstein & Wolf, Philadelphia, Pa., for appellee.

Before ALDISERT, ROSENN and WEIS, Circuit Judges.

## OPINION OF THE COURT

WEIS, Circuit Judge.

Petitioner Benjamin Wright was convicted by a Pennsylvania court of aggravated robbery and murder in the shooting death of a pedestrian in Philadelphia on July 11, 1972. After the state supreme court affirmed the convictions, *Commonwealth v. Wright*, 460 Pa. 247, 332 A.2d 809 (1975), Wright filed a petition for habeas corpus in the United States District Court. Finding that Wright's confession was the product of an illegal "dragnet" arrest, the district court granted the writ. After a review of the complete record, we find ourselves in disagreement with the district court and vacate its order.

At approximately 9:35 on the evening of July 11, 1972, two police officers were driving on patrol when two shots rang out. The officers immediately drove toward the sound, and as they approached the intersection of 56th and Ludlow Streets, they saw a man fall to the street and two black males running toward them. The men turned into Ludlow Street and continued their flight. After a brief, unsuccessful chase, the officers directed their attention to the victim and took him to a hospital. Other officers arrived on the scene within a few minutes and obtained a description of the assailants from an off-duty policeman and another witness who had seen the incident. The police radio broadcasted information about the shooting, its location, and the direction in which the assailants had run, and gave the following description: Two Negro males, 5'7" to 5'8", medium to dark complexion, "wearing dark colored T shirts,

like silk underwear" blue pants or dark pants, 17 to 18 years of age, "semi-bush" haircut, thin or medium build.

Approximately an hour later, Officer John Clinkscale, cruising one block away from the scene of the shooting and in the direction in which the assailants had run, saw the petitioner sitting on a stoop. He was wearing a black T shirt of a silk-like material and blue denim trousers, was 5'9" tall and weighed 148 pounds. Petitioner was taken to the police station along with several companions. Before accosting petitioner, the officer had arrested four to six other suspects. He explained that he had taken anyone close to the description given by the broadcast.[1] The record contains no accurate count of the number of suspects taken into custody that night; estimates range from "eight to twelve" to as high as "fifteen to twenty."

Wright was questioned from about 3:30 A.M. to 5:00 A.M., during which he denied any involvement in the crime. At about 5:00 A.M. the interrogators were told that Jackson had confessed and implicated petitioner. The officers told petitioner about this development and took him to a nearby room where Jackson confirmed the fact. Wright then admitted his participation in the robbery and stated that Jackson had shot the victim.

At trial a witness named John Cochran testified that shortly after the shooting Wright told him "[t]hat him [petitioner] and Chris tried to rob somebody; that Chris had the gun. He didn't know the man had one. The man reached back and Chris emptied the gun into him, and that was it." Cochran further testified that he had told a detective about Wright's statement some time before midnight on the evening of the crime.[2] Cochran signed a formal statement some hours later.

At a suppression hearing held before the state court trial, petitioner alleged that his

arrest had been illegal. The hearing judge found that the Philadelphia police had probable cause to arrest petitioner and, accordingly, denied suppression of the confession. A jury returned a guilty verdict in the trial before another judge who, in ruling on post-trial motions, disagreed with the finding of the suppression hearing. A trial judge concluded that the petitioner had been picked up as part of a mass arrest but held the confession was admissible because the taint of the illegal arrest had been dissipated. The testimony about the circumstances of the arrest at both the suppression hearing and the trial did not differ substantially.

On appeal, the Pennsylvania Supreme Court decided that petitioner's confession was admissible since it was prompted by the confrontation with his accomplice rather than by exploitation of an alleged illegal arrest, *Commonwealth v. Wright, supra.* The court found it unnecessary to determine whether the arrest was the result of a police dragnet, although in a companion case, *Commonwealth v. Jackson*, 459 Pa. 669, 331 A.2d 189 (1975), the conviction of petitioner's accomplice was reversed on that ground.

Petitioner then instituted habeas corpus proceedings in the district court. After argument, the district court granted the writ, holding that petitioner's confession was inadmissible because it was obtained as a direct result of an illegal arrest.

Both the district court and the Pennsylvania appellate court relied upon *Davis v. Mississippi*, 394 U.S. 721, 89 S.Ct. 1394, 22 L.Ed.2d 676 (1969), and *Commonwealth v. Fogan*, 449 Pa. 552, 296 A.2d 755 (1972), and described the police action as a dragnet arrest. Neither court, however, noted the distinction between the facts in those cases and the one at bar. In *Davis v. Mississippi, supra*, a rape victim could give no better description of her assailant than that he was a Negro youth. Local police thereupon

---

1. The same officer also arrested petitioner's accomplice, Christopher Jackson, at about the same time, after seeing him with an elderly man in an encounter which appeared to the officer to be a "shakedown." Jackson was shirtless and wore light blue trousers. *Commonwealth v. Jackson*, 459 Pa. 669, 331 A.2d 189 (1975).

2. Trial transcript at pp. 171, 174–76, 190.

took at least 24 black young men to the police station for fingerprinting and interrogated 40 to 50 others. The state conceded that there was no probable cause for the detention of any of these young men. In *Commonwealth v. Fogan, supra*, the police rounded up all the members of two rival street gangs after a shooting incident. No probable cause existed for arresting the defendant in that case other than his membership in one of the gangs. It was not even known if he had been with the gang on the night the crime occurred. Clearly in both *Davis* and *Fogan*, probable cause for arrest of anyone detained was lacking.

▮▮▮ In the case at bar, however, whether probable cause for arrest existed is a matter which requires some analysis. The question is whether the description of the assailants, as well as the time and geographic factors, were sufficient for a prudent man to believe that petitioner had committed the offense. *Beck v. Ohio*, 379 U.S. 89, 85 S.Ct. 223, 13 L.Ed.2d 142 (1964); *Brinegar v. United States*, 338 U.S. 160, 69 S.Ct. 1302, 93 L.Ed. 1879 (1949). The fact that others may also have met the same description is not in itself determinative. The inquiry must determine whether the information is adequate to narrow down the list of potential suspects so that probable cause for petitioner's arrest and not mere possibility is the criterion. It is obvious that race and age alone, as in *Davis v. Mississippi, supra*, do not furnish probable cause. But in *United States ex rel. Hollman v. Rundle*, 461 F.2d 758 (3d Cir. 1972), we agreed with the Pennsylvania courts in finding probable cause for arrest where the description included race, height, weight, color of hair, distinctive type of hair styling, precise color of clothing, and the suspects were apprehended near the scene of the crime one night after it had occurred. *See also United States ex rel. Dessus v. Commonwealth of Pennsylvania*, 452 F.2d 557 (3d Cir. 1971), where the description was more general but the arrest was made within a few minutes after commission of the crime and in the early morning hours when few people were about.[3]

The fact that there were other persons approximating the description may have value in deciding whether the characteristics listed are sufficiently distinctive. However, judgmental errors in applying the description in the detention of others do not eliminate the necessity for examination of probable cause in the specific arrest under scrutiny. Here, the description was close to that found adequate in *United States ex rel. Hollman, supra*, but lacked the distinctive hair styling touch. The proximity of time and place, however, was more immediate than that in *Hollman*. That the question is a close one is borne out by the conflicting rulings of the two state judges who heard substantially the same evidence.

▮ As we noted in *United States v. Thompson*, 420 F.2d 536, 540 (3d Cir. 1970), in an alleged illegal arrest case, the reviewing court must evaluate the individual facts. Because of the limited precedential effect of such review, we do not deem it desirable to resolve the issue of probable cause here because the case hinges on another factor, the legality of custody at the time the confession was given.

---

**3.** For cases analyzing adequacy of descriptions *compare Commonwealth v. Hicks*, 434 Pa. 153, 253 A.2d 276 (1969) (defendant without mustache, but in need of shave, wearing light or beige colored coat, held invalidly arrested when description was Negro in his thirties, with given height and weight, with a mustache, and wearing a brown coat), *and Commonwealth v. Berrios*, 437 Pa. 338, 263 A.2d 342 (1970) (one Negro in dark clothing in company of one Puerto Rican in light clothing walking east on Ontario Street about three blocks from scene of crime held invalidly arrested when description was two Negroes in dark clothing and one Puerto Rican in light clothing walking east on Ontario Street), *with United States v. Thurman*, 141 U.S.App.D.C. 126, 436 F.2d 280 (1970) (defendant who, save for attire, fitted description held validly arrested when description was Negro male 5′8″–5′9″, 140 pounds, medium complexion, black leather jacket and brown hat) *and United States v. Skinner*, 412 F.2d 98 (8th Cir.), *cert. denied*, 396 U.S. 967, 90 S.Ct. 448, 24 L.Ed.2d 433 (1969), (defendant matching description in every respect held validly arrested when description was white male, 35–45 years old, slender build, less than 5′6″ in height, brown hair turning gray, needing a shave, hatless, and located in a specific geographic area).

In *Virgin Islands v. Gereau*, 502 F.2d 914, 925 (3d Cir. 1974), *cert. denied*, 420 U.S. 909, 95 S.Ct. 829, 42 L.Ed.2d 839 (1975), this court decided that a defendant's original illegal arrest was converted into a lawful detention by the issuance of an arrest warrant while he was in custody. A statement secured after issuance of the warrant, therefore, was held not to be tainted by the original unlawful detention. *Gereau* held that it would be a charade to require police to release an illegally detained prisoner and then rearrest him on the station house steps pursuant to a valid warrant. The same reasoning applies if after an illegal arrest the police become aware of the existence of probable cause from a source other than the prisoner. Under those circumstances, it is not necessary to require that the police make a fresh arrest of the prisoner.[4]

Thus, even if it is assumed that Wright's initial arrest was without probable cause, the record reveals that before he gave his incriminating statement, the police had additional evidence of his complicity in the crime from Cochran's pre-midnight disclosure. When Cochran's statement was added to the descriptions furnished by the witnesses as well as the time and place of apprehension, the police had a strong case to support probable cause.

The circumstances of Cochran's arrest were not fully developed. It does appear, however, that he was 18 years of age at the time, was 5'8″ in height, and was arrested about a block away from the scene of the crime. The arresting officer was someone other than Clinkscale who had taken petitioner into custody. There is no evidence in the record that Cochran's arrest was either legal or illegal. Indeed, even if it were illegal, petitioner would have no standing to raise the issue here. Fourth Amendment rights are personal and may not be vicariously asserted. *Brown v. United States*, 411 U.S. 223, 230, 93 S.Ct. 1565, 36 L.Ed.2d 208 (1973); *Alderman v. United States*, 394 U.S. 165, 174, 89 S.Ct. 961, 22 L.Ed.2d 176 (1969).

Moreover, characterizing Wright's and Jackson's arrests as part of a flagrantly illegal dragnet does not withstand close scrutiny because the question of probable cause in each instance is indeed a close one. The arrests were not made on a wide ranging indiscriminate basis, but rather were confined to persons meeting the description or something close to it. In any event, the district court's reasoning does not apply to the information which Cochran supplied. His evidence goes to the question of probable cause for Wright's continued detention—not to the confession which came later. Wright was not informed of Cochran's statement and, therefore, that disclosure could not have influenced petitioner's decision to confess. Since Wright's detention was proper before he confessed, any connection between his assumed illegal arrest and the inculpatory statement had been severed.

As the Court indicated in *Alderman v. United States, supra,* the deterrent value of preventing incrimination of those whose rights the police have violated has been considered sufficient to justify suppression of probative evidence. But extending the exclusionary rule to one because of violation of the rights of others has not been shown to be in the public interest. In *Stone v. Powell*, 428 U.S. 465, 486–87, 96 S.Ct. 3037, 3048, 49 L.Ed.2d 1067 (1976), the Court said: "Despite the broad purpose of the exclusionary rule, it has never been interpreted to proscribe the introduction of illegally seized evidence in all proceedings or against all persons," *citing United States v. Calandra*, 414 U.S. 338, 94 S.Ct. 613, 38 L.Ed.2d 561 (1974). The Court suggested that the conflict between deterrent effect on police conduct and impairment of the truth seeking function of trial found some resolution in the standing requirement. *See Stone v. Powell, supra* at 488, 96 S.Ct. 3037.

---

4. In *Gereau* the arrest was for a misdemeanor which required the issuance of a warrant. The power to arrest on probable cause without a warrant applied only to felonies under Virgin Island law.

 Using this analysis, we conclude that petitioner has no standing to contest the legality of Jackson's arrest and subsequent detention.[5] The rule enunciated in *Wong Sun v. United States*, 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963), applies to an illegal arrest of petitioner, not that of some other person. That same reasoning applies to Cochran's detention, if that had been illegal. Where no standing exists, information secured as the result of an illegal search and seizure of one person's premises may be used to supply probable cause for the arrest of another. *United States ex rel. Cardaio v. Casscles*, 446 F.2d 632 (2d Cir. 1971).

The Supreme Court of Pennsylvania found that the confrontation between Jackson and Wright was a sufficiently independent circumstance aside from the arrest which brought about the confession. That court, therefore, found that the *Wong Sun* test had been satisfied. The Court reached a similar result in *Fogan v. Commonwealth, supra.* There, the defendant's illegal arrest during a dragnet was held not to bar admission of his confession obtained after police learned of his complicity from the victim. The court reasoned that the incriminating statement was not the result of exploitation of the initial illegality but was obtained by means sufficiently distinguishable so as to have been free of taint. In that case the police informed the defendant what they had been told by the victim.

In summary, assuming only for sake of argument that petitioner's arrest was illegal, his detention ceased to be unlawful when the police received the Cochran statement shortly before midnight and thus had probable cause for his arrest. Petitioner's confession which he gave thereafter, prompted no doubt by the confrontation with Jackson, was admissible in evidence at the state trial. Accordingly, defendant was properly convicted in the state court and the writ of habeas corpus should not have been granted by the district court.

5. Whether there was probable cause for Jackson's detention after Cochran told the police

The order of the district court will be vacated.

about Wright's conversation has not been considered by the Pennsylvania courts.