J-S49012-14

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|
| Appellee | |
| v. | |
| DONTEZ WINDLE | |
| Appellant | No. 2696 EDA 2013 |

Appeal from the Judgment of Sentence August 30, 2013
In the Court of Common Pleas of Philadelphia County
Criminal Division at No(s): CP-51-CR-0002581-2012

BEFORE: OLSON, OTT and STABILE, JJ.

MEMORANDUM BY OLSON, J.:                    **FILED SEPTEMBER 17, 2014**

Appellant, Dontez Windle, appeals from the judgment of sentence entered on August 30, 2013. We affirm.

The suppression court summarized the factual background of this case as follows:

> On December 15, 2011, at approximately 9:20 p.m., Police Officer Michael O'Brien testified that while on duty with his partner, Officer [Stephen] Toner, at 29th Street and Girard Avenue, which is one block north of Poplar Street, they received a radio call that a robbery at [gunpoint] had just occurred at 20th and Poplar Street which the officer described as a high crime area. The call described the suspect as a black male wearing a black hood[ie] and dark blue jeans with a black handgun. Officer O'Brien then proceeded with lights and sirens to 20th and Poplar Street. . . .
>
> While the officers were surveying the area, as they approached 25th and Poplar Street, they observed Appellant wearing a hood[ie] pulled over his face and tan jeans which Officer O'Brien testified looked dark from his location, coming westbound by the

Girard College wall which is in close proximity to the location. Officer O'Brien estimated that this location was about three blocks away from the location of the robbery. Officer O'Brien stopped the car several feet in front of Appellant. Before the officers said anything, Appellant handed the officers his P[ennsylvania] state ID card. Officer O'Brien testified that he found it strange that Appellant handed him his ID card without being asked. Officer O'Brien noticed that Appellant was sweating, although it was the middle of December. Officer O'Brien also did not understand why the Appellant had his hood[ie] up.

Officer O'Brien testified at that point[,] because of the proximity of the location and the dangerous nature of the crime, the officers decided to conduct a **Terry**[1] frisk of Appellant for their safety due to the report of a gun being used in the robbery. Officer O'Brien started the pat-down on the chest of Appellant. While moving Appellant's jacket out of the way, Officer O'Brien felt a heavy object hit his wrist. Because the jacket was so thin, Officer O'Brien could see a shape of a gun through the jacket. Officer O'Brien asked Appellant what it was and Appellant said that it was a gun. The officers then detained Appellant and recovered the firearm from the right jacket pocket. The officers had other officers bring the complainant down to see if they could identify Appellant. When the complainant arrived, he said that Appellant was not the robber. Appellant was thereafter arrested. . . .

Suppression Court Opinion, 2/7/14, at 2-3.

The procedural history of this case is as follows. Appellant was charged via a criminal complaint with receiving stolen property,[2] carrying a firearm without a license,[3] and carrying a firearm on the public streets of

---

[1] **See Terry v. Ohio**, 392 U.S. 1 (1968).

[2] 18 Pa.C.S.A. § 3925(a).

[3] 18 Pa.C.S.A. § 6106(a)(1).

Philadelphia.[4]  A criminal information charging those same offenses was filed on March 13, 2012.

On December 18, 2012, Appellant orally moved to suppress the firearm that was found on Appellant's person.  After conducting an evidentiary hearing, the suppression court denied the motion that same day.  On July 18, 2013, Appellant proceeded to a bench trial and was found guilty of carrying a firearm without a license and carrying a firearm on the public streets of Philadelphia.  On August 30, 2013, Appellant was sentenced to an aggregate term of 6 to 23 months' imprisonment.  This timely appeal followed.[5]

Appellant raises one issue for our review:

Did the [suppression] court err in denying [Appellant's] motion to suppress when the stop and subsequent pat down of [Appellant] was not supported by a reasonable suspicion or probable cause since [Appellant] did not match the flash information provided to the arresting officer and was not engaging in any activity consistent with criminal behavior at the time of the stop?

Appellant's Brief at 3.

---

[4] 18 Pa.C.S.A. § 6108.

[5] On September 26, 2013, the trial court ordered Appellant to file a concise statement of errors complained of on appeal ("concise statement").  **See** Pa.R.A.P. 1925(b).  On October 8, 2013, Appellant filed his concise statement.  On February 7, 2014, the suppression court issued its Rule 1925(a) opinion.  **See** Pa.R.A.P. 1925(a)(1) (trial court may request a judge who made a prior ruling which is challenged on appeal file a Rule 1925(a) opinion). Appellant's lone issue on appeal was included in his concise statement.

"In addressing a challenge to a [suppression] court's denial of a suppression motion we are limited to determining whether the factual findings are supported by the record and whether the legal conclusions drawn from those facts are correct." **Commonwealth v. Brown**, 64 A.3d 1101, 1104 (Pa. Super. 2013), *appeal denied*, 79 A.3d 1096 (Pa. 2013) (internal alterations and citation omitted). "[O]ur scope of review is limited to the factual findings and legal conclusions of the suppression court." **In re L.J.**, 79 A.3d 1073, 1080 (Pa. 2013) (citation omitted). "We may consider only the Commonwealth's evidence and so much of the evidence for the defense as remains uncontradicted when read in the context of the record as a whole." **Commonwealth v. Gary**, 91 A.3d 102, 106 (Pa. 2014) (citation omitted).

We note the procedural posture of this case and how that impacts our scope of review in this case. The suppression hearing in this case occurred in December 2012 and the bench trial occurred in July 2013. In October 2013, our Supreme Court decided **L.J.** In **L.J.**, our Supreme Court held that this Court's scope of review when reviewing a suppression court's denial of a suppression motion is limited to the evidence presented at the suppression hearing. **L.J.**, 79 A.3d at 1085. However, our Supreme Court chose to apply this rule prospectively instead of retroactively. **Id.** at 1088-1089. As the suppression hearing and trial in this case occurred prior to **L.J.**, we may review both the evidence presented at trial and the evidence presented at

the suppression hearing. *See id.* at 1089 ("All litigation commenced Commonwealth-wide after the filing of [*L.J.*], will be considered in accord with [that] opinion.").

In this case, the difference between the record emerging from Appellant's suppression hearing and the record developed at trial implicates one of the factual findings of the suppression court. Based upon the testimony at the suppression hearing, the suppression court found that it only took Officers O'Brien and Toner 30 seconds from the time that they received the flash description of the suspect until they reached Appellant. *See* Suppression Court Opinion, 2/7/14, at 2, *citing* N.T., 12/18/12, at 2. However, at trial Officer O'Brien testified that it took approximately 11 minutes from the time that he and Officer Toner received the flash description until they encountered Appellant. N.T., 7/18/13, at 10, 21-22. Officer O'Brien's testimony was confirmed by Commonwealth Exhibit 1, which was a transcript of the police dispatch on the night in question. As the suppression court did not hear the testimony given at trial, we cannot fault it for relying solely upon the facts presented at the suppression hearing. However, as the testimony at trial clearly shows that the gap from the time Officers O'Brien and Toner received the flash description until they encountered Appellant was 11 minutes, we will use that timeframe for the purposes of our analysis.

Appellant argues that the police officers detained him, and patted him down for weapons, without reasonable suspicion or probable cause. Thus, he contends that the search violated both the state and federal constitutions. "As we have explained, the Fourth Amendment to the United States Constitution and Article I, Section 8 of [the Pennsylvania] Constitution protect citizens from unreasonable searches and seizures. To safeguard these rights, courts require police to articulate the basis for their interaction with citizens in three increasingly intrusive situations." *Commonwealth v. Clemens*, 66 A.3d 373, 378 (Pa. Super. 2013) (internal alterations, quotation marks, and citation omitted).

We have described three types of police/citizen interactions, and the necessary justification for each, as follows:

> The first of these is a mere encounter (or request for information) which need not be supported by any level of suspicion, but carries no official compulsion to stop or respond. The second, an investigative detention, must be supported by reasonable suspicion; it subjects a suspect to a stop and period of detention, but does not involve such coercive conditions as to constitute the functional equivalent of arrest. Finally, an arrest or custodial detention must be supported by probable cause.

*Commonwealth v. Williams*, 73 A.3d 609, 613–614 (Pa. Super. 2013), *appeal denied*, 87 A.3d 320 (Pa. 2014) (internal alteration, quotation marks, and citation omitted). On a motion to suppress, the burden is on the Commonwealth to prove, by a preponderance of the evidence, that the evidence seized from Appellant was legally obtained. *See Commonwealth*

*v. Howard*, 64 A.3d 1082, 1087 (Pa. Super. 2013), *appeal denied*, 74 A.3d

118 (Pa. 2013) (citation omitted).

In this case:

There is no dispute between the parties that the frisk at issue constituted an investigative detention in the nature of a protective weapons search which is governed by *Terry* . . . and requires that police have reasonable suspicion either that criminal activity was afoot or that appellant was armed and dangerous to them:

It is well-established that a police officer may conduct a brief investigatory stop of an individual if the officer observes unusual conduct which leads him to reasonably conclude that criminal activity may be afoot. Moreover, if the officer has a reasonable suspicion, based on specific and articulable facts, that the detained individual may be armed and dangerous, the officer may then conduct a frisk of the individual's outer garments for weapons. Since the sole justification for a *Terry* search is the protection of the officer or others nearby, such a protective search must be strictly limited to that which is necessary for the discovery of weapons which might be used to harm the officer or others nearby. Thus, the purpose of this limited search is not to discover evidence, but to allow the officer to pursue his investigation without fear of violence.

*Commonwealth v. Scarborough*, 89 A.3d 679, 683 (Pa. Super. 2014)

(citation omitted).

As we have explained:

Reasonable suspicion is a less stringent standard than probable cause necessary to effectuate a warrantless arrest, and depends on the information possessed by police and its degree of reliability in the totality of the circumstances. . . . In assessing the totality of the circumstances, courts must also afford due weight to the specific, reasonable inferences drawn from the facts in light of the officer's experience and acknowledge that innocent facts, when considered collectively, may permit the investigative detention.

> The determination of whether an officer had reasonable suspicion . . . is an objective one, which must be considered in light of the totality of the circumstances.

**Clemens**, 66 A.3d at 379 (ellipsis and citation omitted).

Appellant first argues that the police officers lacked reasonable suspicion because Appellant did not match the flash description of the robbery suspect. We disagree. The record reflects that Appellant matched the flash description of the robbery suspect. Appellant, an African-American, was wearing a black hoodie, a black jacket, and tan jeans. N.T., 12/18/12, at 8, 22. The suspect was described as an African-American male wearing a black hoodie and blue jeans. N.T., 12/18/12, at 8, 22. The suppression court credited Officer O'Brien's testimony that Appellant's tan jeans appeared dark at first sight. **See** Suppression Court Opinion, 2/7/14, at 6. Although not an exact match, the description of the suspect matched the visual appearance of Appellant and his clothing. Thus, Appellant's contention that he did not match the flash description of the suspect is without merit.

Appellant next contends that, even if he did match the flash description of the robbery suspect, this was not enough information for an investigative detention. Appellant cites several cases, which he argues are similar to the case *sub judice*, in which this Court or our Supreme Court determined that the police lacked reasonable suspicion to conduct an

investigative detention. We conclude that all of these cases are distinguishable from the case at bar.

In *Commonwealth v. Jackson*, the encounter between the police officer and the defendant occurred at least 40 minutes after the murder. 331 A.2d 189, 191 (Pa. 1975). Furthermore, the defendant in *Jackson* did not match the flash description of the suspect except in the most general terms. *See id.* at 190. However, the most important difference between *Jackson* and the case at bar was that in *Jackson* our Supreme Court was determining whether the police had probable cause to arrest the defendant, while in the case at bar we are determining whether the police possessed reasonable suspicion to conduct a *Terry* frisk. Thus, the standard our Supreme Court employed in *Jackson* was far more demanding than the standard we must apply in this case.

In *Commonwealth v. Berrios*, the officers stopped two suspects based upon nothing more than a general flash description. 263 A.2d 342, 344 (Pa. 1970). There was nothing else to support a finding of reasonable suspicion. On the other hand, in the case at bar the officers possessed other information which formed the basis of their reasonable suspicion. In particular, Appellant handed the police officers his identification prior to the officers requesting it. Furthermore, it was the middle of December and yet Appellant was sweating. These additional facts, distinguish the case at bar from *Berrios*.

Similar to **Berrios**, in **Commonwealth v. Ryan**, the police officers stopped the defendant based upon nothing more than a general flash description. 384 A.2d 1243, 1247 (Pa. Super. 1978). Although the police officer saw a bulge in the defendant's pocket, the police officer admitted at the suppression hearing that he went far beyond a **Terry** frisk to ensure his safety. **Id.** These measures constituted the functional equivalent of an arrest of the defendant. **Id.** Thus, we held that the police officer lacked the requisite probable cause to arrest the defendant. **Id.** **Ryan** is distinguishable from the case at bar because it involved the higher substantive standard required to justify an arrest.

We agree with the suppression court that this case is more akin to **Commonwealth v. Foglia**, 979 A.2d 357 (Pa. Super. 2009) (*en banc*), *appeal denied*, 990 A.2d 727 (Pa. 2010), than it is to the cases cited by Appellant. In **Foglia**, the defendant matched the description of an individual with a gun given by an anonymous tipster. **Id.** at 359. When the defendant saw the police, he continued walking in the same direction as before, but exhibited nervous behavior by continually looking back at the police. **Id.** When the police exited their vehicle, the defendant exhibited more nervous behavior by adjusting his waistband. **Id.** The police officers, fearing that the defendant may have a weapon, performed a **Terry** frisk and found the defendant was carrying a firearm without a license. **Id.** This Court held

that, under the totality of the circumstances, the police officer had reasonable suspicion to conduct a *Terry* frisk. *Id.* at 361.

In the case *sub judice*, like in *Foglia*, Appellant generally matched the flash description of the suspect. As in *Foglia*, police had reason to believe that Appellant was armed with a firearm. Unlike in *Foglia*, however, this information came from a known source, the robbery victim, and not an anonymous tipster. Finally, although the nervous behavior of the defendant in *Foglia* differed from the type of nervous behavior exhibited by Appellant, both individuals exhibited nervous behavior that reasonably could lead an investigating officer to become concerned for his safety and the safety of others nearby.

Likewise, in *Scarbourough*, the defendant was riding his bicycle when police pulled him over to issue a citation for speaking on his cell phone while operating the bicycle. *Scarbourogh*, 89 A.3d at 682. When the police approached, they noticed that the defendant was acting nervously. *Id.* This Court held that the defendant's nervousness, combined with the fact that the interaction was occurring in a high crime area, was sufficient to give the officers reasonable suspicion to conduct a *Terry* frisk. *Id.* at 684. The same factors are present in this case. The interaction between Appellant and Officers O'Brien and Toner occurred in a high crime area and Appellant was acting nervously. In addition, Appellant matched the flash description of a suspect who had recently committed an armed robbery in the area.

*See also Commonwealth v. Buchert*, 68 A.3d 911, 914 (Pa. Super. 2013), *appeal denied*, 83 A.3d 413 (Pa. 2014) (citation omitted) ("[O]n multiple occasions we have held that [] furtive movements, when witnessed within the scope of a lawful traffic stop, provided a reasonable basis for a protective frisk.").

As our Supreme Court has explained:

> A large portion of appellant's brief is devoted to citing cases which hold that certain factors present in the instant case, standing alone, are insufficient to constitute reasonable suspicion. Appellant's argument overlooks the mandate that reasonable suspicion must be evaluated based on the totality of the circumstances. It is not the function of a reviewing court to analyze whether each individual circumstance gave rise to reasonable suspicion, but rather to base that determination upon the totality of the circumstances—the whole picture.

*In re D.M.*, 727 A.2d 556, 559 (Pa. 1999) (citation omitted). "[E]ven a combination of innocent facts, when taken together, may warrant further investigation by the police officer." *Commonwealth v. Caban*, 60 A.3d 120, 129 (Pa. Super. 2012), *appeal denied*, 79 A.3d 1097 (Pa. 2013) (citation omitted).

In this case, the combination of several innocent factors gave Officers O'Brien and Toner reasonable suspicion that Appellant may be armed. Officers O'Brien and Toner had reliable information, from a known source, that less than 20 minutes prior to their interaction with Appellant an individual matching Appellant's general description had committed an armed robbery in the area. When the officers exited their vehicle to speak with

- 12 -

Appellant, he immediately provided his identification. Although it was the middle of December, Appellant was sweating. Moreover, the encounter occurred in a high crime area at night. Thus, the officers reasonably concluded that Appellant may be armed. In order to protect themselves, the officers conducted a limited *Terry* frisk. The fact that the robbery victim ultimately declared that Appellant was not the perpetrator is irrelevant to whether the investigating officers possessed reasonable suspicion to effectuate a *Terry* frisk at the time they encountered Appellant. *Cf. Miller v. Harget*, 458 F.3d 1251, 1256 (11th Cir. 2006) (acquittal is not determinative of whether reasonable suspicion existed at the time of the stop). Thus, Officers O'Brien and Toner had reasonable suspicion to conduct the *Terry* frisk. Accordingly, the suppression court correctly denied Appellant's motion to suppress.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 9/17/2014

- 13 -