622 A.2d 325

**COMMONWEALTH of Pennsylvania**

v.

**Michael LUCAS, a Minor, Appellant.**

Superior Court of Pennsylvania.

Submitted Jan. 19, 1993.

Filed March 8, 1993.

174

Jack M. Myers, Philadelphia, for appellant.

Kathy L. Echternach, Asst. Dist. Atty., Philadelphia, for Com., appellee.

Before CAVANAUGH, JOHNSON and CERCONE, JJ.

CAVANAUGH, Judge.

This is an appeal from a judgment of sentence of 2–4 years incarceration followed by 5 years probation following the appellant's plea of guilty to voluntary manslaughter[1] and criminal conspiracy. The appellant, sixteen years old at the time of trial, raises the following issue on appeal:

> Whether the trial court's sentencing of the [appellant], a juvenile, to an adult prison constitutes cruel and unusual punishment violative of the United States and Pennsylvania Constitutions.

Our review of the appellant's position and the record indicates that the challenged treatment of the appellant is not of the extreme level of severity necessary to constitute "cruel and unusual" punishment. We affirm.

The lower court more than adequately summarized the facts of the incident underlying appellant's conviction:

> At approximately 8:40 p.m. on February 1, 1990, police responded to a shooting which occurred at 1109 "A" Parrish Street, in the city and county of Philadelphia. The police arrived on location and found Frederick Young (age 12) seated upright in a chair with a gunshot wound to the chest. Later that evening, Frederick Young died at the hospital.
>
> Prior to the shooting, at around 8:00 p.m., the decedent and Sharock Griffin (age 13) had gone to the apartment building where Rashaan Melton (age 13) lived so that Young

---

1. The Commonwealth agreed in exchange for the plea to "demanderize" the offenses. A handgun was used in the commission of the charged offenses, and the trial court would have had otherwise to impose a mandatory minimum sentence of five years. *See* 42 Pa.C.S.A. § 9712. We note the word "demanderize", which we take to mean release from obligatory sentencing requirements, is taken from the Commonwealth's brief.

could retrieve a Nintendo game cartridge he had lent to Melton. In the hallway, they met Melton, Michael Lucas and Teian Wells (age 10). Melton asked Griffin and the decedent if they wanted to see their club house. After opening the door to the club house, Melton pushed Griffin and Young inside. Michael Lucas closed the door and locked it. Lucas pulled out a rifle and guarded the front door. Melton proceeded to take out a handgun and remove all but one bullet from it.

Young and Griffin were then forced to pull down their pants and kiss the other three individuals' sneakers. Then Melton pointed the gun at Griffin and pulled the trigger. However, the gun did not fire. Afterwards, Melton pointed the gun at Young's chest as Wells said, "Say your last words". Melton pulled the trigger. This time the gun discharged, and a bullet struck Young in the chest. Young died later that evening.

The appellant was subsequently arrested and charged with murder, criminal conspiracy and related offenses for his conduct. The appellant filed a motion to transfer his case to juvenile court on February 27, 1991. However, on June 5, 1991, this motion was abandoned when he plead guilty to voluntary manslaughter and criminal conspiracy in return for the Commonwealth not seeking to enforce a mandatory minimum of five years imprisonment. See note 1 *supra*. On August 13, 1991, the appellant was sentenced as mentioned *supra*. Sentence was to be served at the State Correctional Institute at Camp Hill. The appellant subsequently filed a motion to reconsider his sentence on August 19, 1991. This petition was denied following a hearing on October 8, 1991. This appeal followed.

On appeal, the appellant claims that the requirement he serve his sentence in a State Correctional facility where adult inmates are also housed violates the proscriptions against cruel and unusual punishment in the United States Constitution's Eighth Amendment and in Article I, section 13 of our Commonwealth's Constitution. The appellant notes that at the time of the offense, he was fifteen (15) years old, while at

the time he pled guilty, he was sixteen (16) years old. He asserts that his background shows amenability to treatment in the juvenile justice system. Although acknowledging that the trial court ordered that measures be taken to segregate him from the adult prison populace, he argues that the segregation, itself, is a violation of the cruel and unusual punishment principle. He queries why the appellant's rehabilitation should be retarded by segregating him from older convicts where facilities exist for juvenile offenders. He cites the Juvenile Act for the general proposition that children should not be detained in a facility with adults. *See* 42 Pa.C.S.A. § 6327.

■ Preliminarily, we note that appellant has not made an effort to analyze how our Commonwealth's constitutional proscription of cruel and unusual punishment in Article I, section 13 differs from the protection afforded in our federal Constitution's Eighth Amendment. Consequently, as appellant has failed to argue that our Commonwealth's Constitution provides greater protection in this regard, we decline to address a state constitutional analysis. *See, e.g., Commonwealth v. Edwards,* 526 Pa. 374, 391, 586 A.2d 887, 895 (1991) (setting forth general rule that litigants must brief certain factors when state constitution is implicated). In any event, our prior pronouncements afford the conclusion that "[t]he guarantee against cruel and unusual punishment contained in Pennsylvania Constitution's Article I, section 13, provides no broader protections against cruel and unusual punishment than those extended under the United States Constitution." *Commonwealth v. Strunk,* 400 Pa.Super. 25, 35 n. 11, 582 A.2d 1326, 1331 n. 11 (1990); *accord Commonwealth v. Zettlemoyer,* 500 Pa. 16, 72–74, 454 A.2d 937, 967 (1982), *cert. den. sub nom Zettlemoyer v. Pennsylvania,* 461 U.S. 970, 103 S.Ct. 2444, 77 L.Ed.2d 1327 (1983), *reh'g. den.,* 463 U.S. 1236, 104 S.Ct. 31, 77 L.Ed.2d 1452 (1983).

■ Before analyzing appellant's specific assertions, we address the general contention that it is cruel and unusual punishment *per se* to confine a sixteen year old in a state prison. In *Commonwealth v. Williams,* 514 Pa. 62, 522 A.2d

1058 (1987), our Supreme Court addressed whether the Juvenile Act violates substantive due process by creating an impermissible presumption that juveniles accused of murder should be treated as adults. The court responded to this issue as follows:

> Firstly, we note there is no constitutional guarantee of special treatment for juvenile offenders. Secondly, murder has always been within the original jurisdiction of the criminal division and excluded from the jurisdiction of the juvenile courts. *Commonwealth v. Pyle*, 462 Pa. 613, 622, 342 A.2d 101, 106 (1975). Appellant has cited no authority, and we know of none, why the legislature should be constitutionally prevented from making the determination that persons accused of murder should be prosecuted in the criminal division of the court of common pleas. Murder is a heinous and serious crime, and the legislature's assumption that one who commits murder is in need of adult discipline and restraint is a reasonable one. We see no reason to disturb the legislature's judgment that one, even though a juvenile, who is charged with murder to be prosecuted "under the criminal law and procedures." 42 Pa.C.S.A. Section 6355(e).

*Id.* 514 Pa. at 71–72, 522 A.2d 1058, 1063. *See also Commonwealth v. Pyle*, 462 Pa. 613, 622–23, 342 A.2d 101 (1975) (same). Accordingly, the tenor on the Court's pronouncements, as applied to this case, would seem to indicate that the status of an individual as a juvenile does not necessarily implicate constitutional concerns. We note that the courts of this Commonwealth have also approved of confining the elderly and the handicapped in state prisons. *E.g., Commonwealth v. Wildermuth*, 347 Pa.Super. 640, 501 A.2d 258 (1985), *appeal dism'd. en banc*, 514 Pa. 374, 524 A.2d 490 (1987) (not cruel and unusual punishment to sentence eighty-one year old offender to prison); *Commonwealth v. Landi*, 280 Pa.Super. 134, 421 A.2d 442 (1980) (imposition of prison sentence upon paraplegic offender did not constitute cruel and unusual punishment). Further, this issue has been considered and rejected by courts of other jurisdictions. *See In re Welfare of*

*R.L.W.*, 309 Minn. 489, 245 N.W.2d 204 (1976) (it is not *per se* cruel and unusual punishment to place a juvenile in an adult institution); *see also, e.g., People v. Grisso,* 104 Cal.App.3d 380, 163 Cal.Rptr. 547 (1980) (court rejected claim by seventeen-year-old defendant who had been convicted of first degree murder and robbery that placing him in adult prison where he could be "threatened with sexual attacks, and will not be rehabilitated" constituted cruel and unusual punishment). *Accord Edwards v. Schmidt,* 321 F.Supp. 68, 78–79 (W.D.Wis.1971) (it was not cruel and unusual punishment to transfer juveniles who had been adjudged delinquent to an adult correctional facility). Thus, on its face, the treatment of the accused does not violate the Eighth Amendment *per se.*

■ However, we do not rest our disposition on the aforementioned analysis. We believe that the specific allegations of an Eighth Amendment violation should be analyzed in light of the record. When answering whether the incarceration of a juvenile in an adult prison violates the Eighth Amendment, we must consider a myriad of factors, such as the juvenile's age, the gravity of his or her offense, the institution in which the juvenile is incarcerated, and his treatment at the institution.

■ We first address appellant's contention that his incarceration in a facility that primarily houses adults is "cruel and unusual." Appellant has not indicated how the Commonwealth's treatment of him in any way rises to the level of a violation of the Eighth Amendment. Appellant was sixteen years old at the time of sentencing. He is presently seventeen years old. Thus, appellant is by no means a "child" in the familiar sense of the word. Moreover, although he received a relatively light sentence, the crime he committed was a grave one. At Camp Hill, the appellant, to the extent possible, is segregated from the adult prisoners. He has testified that he shares a cell with another juvenile, that an adult prisoner has never been allowed in the same cell with him, that correctional officers keep a close watch on him, and that he has never been threatened by an adult prisoner. His claim in this regard rests decidedly uneasily with his claim that his segregation from the general prison populace is "cruel and unusual." The

appellant's segregation from the adult prison population has been so successful that far from being mistreated by adult prisoners, he can complain of being isolated from them.

■ We address next appellant's argument that his separation from the general prison populace is cruel and unusual. We are more concerned with this claim, as enforced isolation could be considered akin to solitary confinement. However, on this record, there is no evidence that appellant is totally isolated from human companionship or even social contact with other prisoners. In fact, appellant shares his cell with another juvenile and his cell block at Camp Hill contains ten other juveniles. The record reveals only that appellant has not been placed in a position where mistreatment may likely occur. While housing a sixteen or seventeen year old in an adult prison may not be the best penalogical practice, and appellant undoubtedly would prefer placement in a juvenile institution, he has not convinced us he is being treated in such a shocking manner that a constitutional violation has occurred.

In light of the foregoing, we find that the record provides no indication that appellant's punishment is so greatly disproportionate to his offense to offend evolving standards of decency or a balanced sense of justice. We note, consistent with our belief expressed *supra* that whether certain conduct constitutes "cruel and unusual punishment" depends on the unique facts of each case, that a direct appeal from judgment of sentence may not be the procedurally proper method of raising this issue. A trial court sentencing a prisoner to a certain punishment has no knowledge how the sentence will actually be applied. As the more correct inquiry would seem to be what conditions the prisoner is living under at the present time, a writ of habeas corpus would appear to be the better device to bring before the court a prisoner's claim. *See Commonwealth ex rel. Bryant v. Hendrick,* 444 Pa. 83, 280 A.2d 110 (1971). Having this issue not properly before us, we mention it in passing, and leave it for another day.

Judgment of sentence affirmed.