638 A.2d 991

COMMONWEALTH of Pennsylvania

v.

**Luis TORO, Appellant.**

Superior Court of Pennsylvania.

Argued Nov. 16, 1993.

Filed March 14, 1994.

384

Robert Rebstock, Philadelphia, for appellant.

Helen Kane, Asst. Dist. Atty., Philadelphia, for the Com., appellee.

Before CIRILLO, FORD ELLIOTT and BROSKY, JJ.

BROSKY, Judge.

This is an appeal from the judgment of sentence entered following appellant's conviction for possession of a controlled substance, *i.e.* cocaine,[1] with the intent to deliver[2] and criminal conspiracy.[3] Appellant presents the following issues for review: (1) whether an alleged conflict of interest existed between trial counsel's representation of appellant and a co-actor, William Cartagena, so as to deprive appellant of his right to the effective assistance of counsel under the United States and Pennsylvania Constitutions; (2) whether the trial court erred in admitting evidence of appellant's failure to appear at a previous trial listing; (3) whether trial counsel was ineffective in failing to object to the prosecutor's cross-examination of appellant regarding the use of other names he had given the police; (4) whether trial counsel was ineffective in failing to object to the prosecutor's closing remarks relating to appellant's fugitive status; (5) whether trial counsel was ineffective in failing to object to the trial court's instruction to the jury that appellant furnished the police with a different name in 1992; (6) whether trial counsel was ineffective in failing to timely litigate a motion to suppress a post-arrest identification of appellant and whether the trial court erred in denying trial counsel's request to litigate this motion; and (7) whether the trial court erred in refusing to grant appellant's motion to suppress keys which were discovered on appellant after his

1. 35 P.S. § 780–104(2)(i)4 (defining coca leaves or any derivative therefrom as a Schedule II controlled substance).

2. 35 P.S. § 780–113(a)(30).

3. 18 Pa.C.S.A. § 903(a).

arrest.[4] For the reasons set forth below, we affirm the judgment of sentence.

It is necessary to recount the relevant facts and history of this case before addressing the merits of appellant's claims. Officer Dickerson and Officer Davis were assigned to conduct an undercover surveillance in a high drug-trafficking area in the City of Philadelphia in August, 1988. At approximately 7:20 p.m., Officer Dickerson and Officer Davis operated an unmarked van which they parked near the intersection of Gurney and Mascher Streets. Using a pair of binoculars, Officer Dickerson observed appellant, Luis Toro, William Cartagena and other males standing at the intersection of Gurney and Waterloo Streets. A white male approached appellant and the other individuals and handed William Cartagena an unknown amount of United States currency. Mr. Cartagena then signaled to another male, who approached the group from a hidden location, took the money from Mr. Cartagena and quickly disappeared up Waterloo Street. Appellant then gave Mr. Cartagena keys. Mr. Cartagena walked to a gray Toyota which was parked nearby and used the keys to open the trunk. Mr. Cartagena removed clear packets containing a white substance from the trunk and handed them to the white male, who then departed from the area. Mr. Cartagena then returned the keys to appellant.

At this time, appellant, Mr. Cartagena and the other males noticed the van and decided to investigate. The males, who were armed with baseball bats, banged on the van and told the occupants to leave the area. Officer Dickerson told the group to leave him alone because he was engaged in amorous relations with a female and that he would leave when he was finished. Officer Dickerson's response apparently satisfied

---

4. Issues III3A and IIIB, as set forth in the statement of the questions presented, are not actually subparts of issue III because they raise distinct allegations of ineffectiveness. We have thus renumbered these questions and the remaining assignments of error. Because a review of the certified record discloses that trial counsel did not object to the matters raised in issues III, IIIA and IIIB (now issues 3, 4 and 5), the question presented for review is not whether the trial court erred but whether trial counsel was ineffective in failing to object. We have rephrased these issues accordingly.

the men and they went back to the street corner where they had previously stood.

Several minutes later, Officer Dickerson observed another transaction in which a second white male approached the group, spoke with Mr. Cartagena and handed him currency. Mr. Cartagena waived down Waterloo Street and the young male who previously took the money reappeared, was given the money and departed. Mr. Toro again gave Mr. Cartagena keys which he used to unlock the trunk of the Toyota. Mr. Cartagena removed plastic packets containing a white substance and handed them to the white male who then left the area. Mr. Cartagena returned the keys to appellant. Officer Dickerson relayed his observation of the two drug transactions and the descriptions of the individuals involved to Sergeant McCloskey, who was supervising the surveillance and who was parked nearby.

The group again became suspicious of Officer Dickerson's van and approached it a second time and were again armed with baseball bats. Unknown individuals struck the van with the bats and threatened to inflict bodily harm on the officers if they did not leave the area. Officer Dickerson advised Sergeant McCloskey of the incident and that he was going to pull out. Sergeant McCloskey, who had previously driven through the area and who was familiar with the descriptions of appellant and Mr. Cartagena, proceeded to the scene with other uniformed officers. Appellant, Mr. Cartagena and several other men were arrested. During a pat-down search, Sergeant McCloskey recovered keys from appellant which he used to open the trunk of the Toyota. Twenty-two small packets and five larger packets containing a white powder were discovered in the trunk. The packets were subsequently analyzed and found to contain cocaine.[5] Appellant and Mr. Cartagena were thereafter charged with various offenses aris-

5. The five large packets each contained approximately 28 grams of cocaine. The twenty-two smaller packets each contained approximately 7 grams of cocaine. Thus nearly three hundred grams of cocaine were recovered from the vehicle.

ing out of this incident.[6]

Appellant failed to appear at a trial listing and a bench warrant for his arrest was issued. For reasons which do not appear of record, appellant was not located until 1992 at which time he was again arrested.[7] Appellant filed a pre-trial motion which contested the legality of his 1988 arrest and which sought to suppress, among other things, appellant's previous identifications and the physical evidence seized by the police. The suppression motion was denied by the lower court. Appellant was convicted of the above offenses following a jury trial held in June, 1992. Appellant filed timely post-trial motions. Appellant subsequently obtained new counsel who filed supplemental post-trial motions on appellant's behalf.[8] All appellant's post-trial motions were denied. Appellant was sentenced on December 30, 1992 to a term of seven (7) to fourteen (14) years imprisonment regarding his drug conviction; no further sentence was imposed with respect to the conspiracy conviction. No motion for modification/reconsideration of sentence was filed. Appellant thereafter initiated a timely appeal to this court.[9]

Appellant's first, third, fourth, fifth and sixth claims all relate to the effectiveness of trial counsel. In reviewing allegations of this type:

6. The charges against Mr. Cartagena were subsequently dismissed without prejudice. Andrew Gay, Esq. represented Mr. Cartagena during these proceedings. Mr. Gay also represented Mr. Cartagena with respect to an unrelated matter at the time of appellant's trial.

7. It is unclear whether appellant was arrested with regard to the instant offenses or as a result of an unrelated crime. At the time of his second arrest, appellant told the police that his name was Luis Padilla.

8. Appellant was represented throughout the suppression and trial proceedings by Andrew Gay. Mr. Gay also filed the initial post-trial motions on appellant's behalf. For ease of discussion we will refer to Mr. Gay as trial counsel. Richard Shore, Esq. was the attorney who represented appellant with regard to the supplemental post-trial motions.

9. Prior to sentencing, appellant obtained new counsel, Louis Savino, Esq., to represent him. Mr. Savino has continued to represent appellant in this appeal.

The threshold inquiry ... is whether the issue/argument/tactic which counsel has foregone and which forms the basis for the assertion of ineffectiveness is of arguable merit; for counsel cannot be considered ineffective for failing to assert a meritless claim. If this threshold is met, it must next be established that the particular course chosen by counsel had no reasonable basis designed to effectuate his client's interest. Finally, we require that the defendant establish how counsel's commission or omission prejudiced him.

*Commonwealth v. Persinger*, 532 Pa. 317, 321, 615 A.2d 1305, 1307 (1992) (citations omitted). We shall evaluate appellant's assertions of ineffectiveness in accordance with this standard.

▆▆▆ Appellant first contends that he was deprived of his constitutional right to the effective assistance of counsel because of an alleged conflict of interest which existed between counsel's dual representation of appellant and Mr. Cartagena.[10] As recognized by this court:

Counsel may be held to have been ineffective in representing a defendant if the defendant demonstrates that an *actual* conflict of interest adversely affected his lawyer's performance. Moreover, ... while it is true that prejudice is presumed when counsel is burdened by an actual conflict of interest, this is so only if the defendant demonstrates that counsel *actively represented conflicting interests* and that an actual conflict of interest affected his lawyer's performance.... [A]n actual conflict of interest ... is evidenced

**10.** Although appellant argues that his rights under both the United States and Pennsylvania Constitution have been violated, appellant has made no effort to explain how the Pennsylvania Constitution differs from the protection afforded by the United States Constitution. Appellant likewise has not complied with the requirements set forth in *Commonwealth v. Edmunds*, 526 Pa. 374, 390, 586 A.2d 887, 895 (1991) (describing the four factors which a litigant must brief and analyze where a provision of the Pennsylvania Constitution is implicated). We accordingly decline to consider whether the Pennsylvania Constitution provides appellant with greater protection than the federal constitution. *Commonwealth v. Lucas*, 424 Pa.Super. 173, 177, 622 A.2d 325, 327 (1993) (declining to consider a state constitutional analysis where the defendant did not comply with *Edmunds* and did not explain how the state constitution differed from its federal counterpart).

whenever during the course of representation, the interests of appellant—and the interests of another client towards whom counsel bears obligations—diverge with respect to a material factual or legal issue or to a course of action.

*Commonwealth v. Smith*, 380 Pa.Super. 619, 629–630, 552 A.2d 1053, 1059 (1988), *allocatur denied*, 525 Pa. 581, 575 A.2d 112 (1990) (citations and quotation marks omitted) (emphasis in original). *Accord Commonwealth v. Munson*, 419 Pa.Super. 238, 244–245, 615 A.2d 343, 346–347 (1992). In addition,

dual representation alone does *not* amount to a conflict of interest.... [T]o make the dual representation rise to a true conflict, [a defendant] need not show that actual harm resulted, but must at least show the possibility of harm.... [A defendant] will satisfy the requirement of demonstrating possible harm, if he can show, inter alia, that he had a defense inconsistent with that advanced by the other client, or that counsel neglected his case in order to give the other client a more spirited defense.

*Commonwealth v. Breaker*, 456 Pa. 341, 345, 318 A.2d 354, 356 (1974) (plurality opinion) (citations and quotation marks omitted). As applied here, appellant has not demonstrated that trial counsel actively represented conflicting interests and that an actual conflict of interest adversely affected trial counsel's performance.

The record reveals that trial counsel had previously represented Mr. Cartagena with respect to charges arising out of the same transaction involving appellant. N.T. 6/17/92 at 362–363. However, these charges had been dismissed and trial counsel no longer represented Mr. Cartagena with respect to this incident. *Id.* Consequently, there was no simultaneous dual representation with respect to the offenses arising out of the same incident.

Of course, the absence of simultaneous representation is not determinative since, in some circumstances, counsel's prior representation can give rise to an actual conflict of interest. *Commonwealth v. Munson*, 419 Pa.Super. at 245, 615 A.2d at 347. While a conflict of interest may be more difficult to prove in the absence of simultaneous representa-

tion, the courts have recognized that a conflict of interest may arise if counsel reveals privileged communications of the former client or otherwise divides his loyalties so that he is incapable of diligently representing his client. *Id.*, 419 Pa.Super. at 245, 246–247, 615 A.2d at 347–348. In this case, there is no indication that trial counsel possessed confidential information resulting from his prior representation of Mr. Cartagena which affected his ability to zealously and effectively represent appellant. There is similarly nothing which would support appellant's speculative assertions that Mr. Cartagena might have implicated himself in the commission of the crime and exculpated appellant. Nor is there any evidence that trial counsel's loyalties were so divided that he was incapable of diligently representing appellant.[11] Appellant and Mr. Cartagena likewise did not have clearly divergent interests, since appellant's defense was that he, Mr. Cartagena and other Hispanic males were simply standing on the street corner and talking at the time they were arrested by the police and that neither he nor anyone else had seen let alone engaged in any drug sales. N.T. 6/17/92 at 300, 305, 334, 338, 369, 375 and 386.

The record also indicates that trial counsel represented Mr. Cartagena at the time of appellant's trial with respect to charges arising out of a different incident which was unrelated to appellant's case. N.T. 6/17/92 at 362–363. However, trial counsel's dual representation of both appellant and Mr. Cartagena at the time of appellant's trial did not result in an actual conflict of interest because the cases involved com-

11. Although appellant refers us to several instances of trial counsel's allegedly divided loyalties, we do not find his assessment to be supported by the record. Rather, the record demonstrates that trial counsel zealously, vigorously and effectively defended appellant's interests throughout the proceedings. For example, trial counsel fully exploited the mistake made by Officer Dickerson at the suppression hearing in which he confused appellant and Mr. Cartagena and identified Mr. Cartagena as the individual who held the keys. *See* N.T. 6/12/92 at 149–155 and 162–165; N.T. 6/17/92 at 405–418; Transcript of Closing Argument 6/17/92 at 5–11. If trial counsel's loyalties were as divided as appellant suggests, trial counsel would not have emphasized Officer Dickerson's mistake at trial, because it directly implicated Mr. Cartagena and tended to exculpate appellant.

pletely unrelated criminal charges. Thus, the concerns which normally arise where co-actors are represented by the same counsel, *e.g.,* the possibility of inconsistent defenses or the neglect of one client's defense, were not implicated here. Under these circumstances, we find that trial counsel was not burdened by a conflict of interest which adversely affected his performance in representing appellant.[12] Accordingly, trial counsel cannot be deemed ineffective on this basis.

Appellant next contends that trial counsel was ineffective in failing to object to the prosecution's cross-examination of appellant regarding his use of different names. Appellant asserts that the prosecutor's examination was improper because he was able to elicit information which implied that appellant had a prior criminal record. In reviewing this issue, we note that trial counsel did object to the prosecutor's attempt to question appellant with regard to his contacts with the police which preceded his 1988 arrest; this objection was sustained by the lower court. N.T. 6/17/92 at 383–384. Consequently, trial counsel cannot be deemed ineffective with respect to this reference. We reach a similar conclusion regarding the prosecutor's other questions.

It is well settled that evidence of distinct crimes is not generally admissible against a defendant unless the evidence

---

12. Appellant additionally argues that trial counsel was ineffective in failing to request a cautionary instruction after Mr. Cartagena was called to the stand and subsequently decided not to testify. This issue was not raised in appellant's statement of the questions and is therefore deemed waived. *Commonwealth v. Unger,* 494 Pa. 592, 595 n. 1, 432 A.2d 146, 147 n. 1, (1980). This issue is nevertheless without merit. Our Supreme Court has held that "[a] mere odd or unexplained occurrence during a trial does not justify the conclusion that the jury has drawn an inference prejudicial to the accused." *Commonwealth v. Todaro,* 524 Pa. 64, 70, 569 A.2d 333, 336 (1990), *cert. denied,* —— U.S. ——, 112 S.Ct. 1271, 117 L.Ed.2d 498 (1992). Consequently, a defendant will not be deemed prejudiced by the lack of a cautionary instruction where a witness is called to the stand and asserts, outside of the jury's hearing, his Fifth Amendment privilege and then leaves the stand. *Id.* Moreover, trial counsel may well have decided not to emphasize the incident by asking for an instruction or otherwise attempting to explain the witness' absence, since the jury may have drawn an adverse inference from Mr. Cartagena's apparent unwillingness to testify on appellant's behalf.

falls within one of the recognized exceptions. *Commonwealth v. Lark,* 518 Pa. 290, 302–303, 543 A.2d 491, 497 (1988). However, it is equally well established that "[e]vidence of flight or self-concealment on the part of a person who knows that he or she is wanted for a crime may be admitted to show consciousness of guilt...." *Commonwealth v. Colson,* 507 Pa. 440, 464, 490 A.2d 811, 823–824 (1985), *cert. denied,* 476 U.S. 1140, 106 S.Ct. 2245, 90 L.Ed.2d 692 (1986). As applied here, the record reveals that the prosecutor did not attempt to introduce evidence pertaining to appellant's prior criminal activity. Instead, the prosecutor elicited information regarding appellant's use of different names during his contacts with the police. N.T. 6/17/92 at 381–382. Evidence of this type was relevant to the issue of appellant's consciousness of guilt and was properly admissible for this purpose. *Commonwealth v. Colson, supra.*

 The mere fact that the cross-examination contained references to police contact was not, standing alone, prejudicial to appellant nor did it indicate that appellant had committed other crimes. As recognized by the Supreme Court, "[t]o warrant a characterization as prejudicial the testimony must convey to the jury, either expressly or by reasonable implication, the fact of a prior criminal offense." *Commonwealth v. Carpenter,* 511 Pa. 429, 437, 515 A.2d 531, 535 (1986) (emphasis omitted). The references in this case primarily related to appellant's 1988 arrest on the instant charges as well as a non-specified more recent contact. N.T. 6/17/92 at 381–382. These references did not expressly or implicitly disclose that appellant had committed a prior offense; rather, they only indicated that appellant had prior "contact" with the police.[13] *Cf. Commonwealth v. Carpenter,*

13. Certainly, appellant's 1988 arrest could not convey prior criminal activity since it was directly related to the charges for which appellant was then being tried. Appellant's 1992 contact was not referred to as an arrest and the jury was never advised that appellant was re-arrested in 1992. Instead, the jury was only informed that appellant had recently given the police a different name. N.T. 6/17/92 at 381 and 382. Because the facts of appellant's 1992 contact were never divulged, the jury may thus have concluded that appellant was re-arrested

*supra* (reference to witness' occupation as a parole officer did not prejudice the defendant and did not imply that the defendant had a criminal record; also citing other cases in which police contact or knowledge of the defendant's address did not reasonably imply prior criminal activity by the defendants). Because the prosecutor's cross-examination was proper and did not reasonably implicate appellant in any prior criminal activity, trial counsel was not ineffective for failing to object to appellant's cross-examination.[14]

 Appellant's third assertion of ineffectiveness involves trial counsel's failure to object to the prosecutor's closing statement in which he referred to appellant as a fugitive from justice. With respect to this claim, our Supreme Court has stated:

It is well established that a prosecutor, just as a defense attorney, must have reasonable latitude in presenting a case to the jury and must be free to present his or her arguments with logical force and vigor. Counsels' remarks to the jury may contain fair deductions and legitimate infer-

with respect to the 1988 offenses rather than as a result of other criminal activity.

14. In connection with this claim, appellant further argues that the prosecutor engaged in deliberate misconduct by referring to appellant's 1992 contact with the police. This issue is waived because it was not raised in the statement of questions presented. *Commonwealth v. Unger, supra.* It is nonetheless without merit. Appellant suggests that the prosecutor violated a trial court ruling which prohibited the prosecutor from introducing evidence of appellant's re-arrest and use of an alias. No such ruling was ever made. Rather, the trial court indicated that evidence pertaining to appellant's failure to appear and/or concealment of his identity was admissible pursuant to *Commonwealth v. Carter,* 409 Pa.Super. 184, 597 A.2d 1156 (1991), *allocatur denied,* 530 Pa. 664, 610 A.2d 44 (1992). N.T. 6/12/92 at 124–125. During an *in camera* discussion, however, the prosecutor stated that he did not intend to introduce evidence through the clerk of courts that the defendant was re-arrested and gave an alias upon his re-arrest. *Id.* at 123. The prosecutor did not violate his prior statement because he never presented any evidence through the clerk of court or any other witness that appellant was re-arrested in 1992 and that he used an alias at this time. However, the prosecutor was permitted to cross-examine appellant and, as we have previously discussed, cross-examination on the use of a different name in an attempt to conceal his identity from the police was proper.

ences from the evidence presented during the testimony.... However, not every intemperate or uncalled for remark by the prosecutor requires a new trial. As we have stated many times, [c]omments by a prosecutor do not constitute reversible error unless the unavoidable effect of such comments would be to prejudice the jury, forming in their minds fixed bias and hostility toward the defendant so that they could not weigh the evidence objectively and render a true verdict. Furthermore, the prejudicial effect of the prosecutor's remarks must be evaluated in the context in which they occurred.... In applying these standards on appellate review ... [the question of] [w]hether this standard has been violated by the language of the district attorney is not in the first instance our decision to make. It is the duty of the trial judge to rule upon the comments; this Court is limited in its review to whether the trial court abused its discretion.

*Commonwealth v. D'Amato*, 514 Pa. 471, 489–491, 526 A.2d 300, 309–310 (1987) (citations and quotation marks omitted). We will examine the prosecutor's reference in accordance with these principles.

The evidence introduced at trial established that appellant had failed to appear for a January, 1989 trial listing of which he had notice and that appellant's next contact with the criminal justice system occurred in January of 1992. N.T. 6/12/92 at 129–131. There was also evidence that appellant utilized different names in his contacts with the police. N.T. 6/17/92 at 381–383. The prosecutor's reference to appellant's fugitive status was thus a fair deduction or legitimate inference to be drawn from the evidence. Moreover, the prosecutor's remark was made in response to trial counsel's closing argument in which he attempted to show that the Commonwealth had misidentified appellant as one of the perpetrators. *See* Transcript of Closing Argument 6/17/92 at 2–23. The prosecutor thus demonstrated that no mistake had been made because appellant's use of an alias and failure to appear evidenced his consciousness of guilt. *See id.* at 24–25. The prosecutor also explained that if some mistakes had been

made in this case, they were attributable to the lengthy delay caused by appellant's failure to appear. *See id.* at 26. When viewed within this context, we find that the comment was proper and was not unduly prejudicial to appellant. We therefore decline to find trial counsel ineffective for failing to object to the prosecutor's remark.

Appellant's fourth ineffectiveness claim arises out of his failure to object to the trial court's instruction to the jury that appellant furnished the police with a different name in 1992. Appellant argues that the instruction was erroneous because the evidence pertaining to appellant's use of a different name was only relevant with respect to the motion *in limine* discussion. Appellant does not refer us to any authority in support of this novel proposition nor are we aware of any such authority. However, as we previously indicated, "[e]vidence of flight or self-concealment on the part of a person who knows that he or she is wanted for a crime may be admitted to show consciousness of guilt...." *Commonwealth v. Colson, supra.*

In this case, appellant admitted that he used the name "Luis Toro" when he was arrested in 1988 and that he used the name "Luis Padilla" in his more recent contact with the police. N.T. 6/17/92 at 381–383. Although appellant testified that his full name is "Luis Alnardo Albino Toro Padilla", *see id.* at 381, the fact remains that he used different surnames in his various contacts with the police. In light of this testimony, the trial court did not err in instructing the jury regarding appellant's use of different names and trial counsel was not ineffective for failing to object to the court's charge. *See Commonwealth v. Carter,* 409 Pa.Super. 184, 194, 597 A.2d 1156, 1160 (1991), *allocatur denied,* 530 Pa. 664, 610 A.2d 44 (1992) (jury instruction on flight and/or concealment was proper where the defendant failed to appear for a scheduled trial date, a bench warrant was issued for his arrest and the defendant attempted to avoid apprehension by giving the police a false name when he was apprehended more than one year later). *See also Commonwealth v. Martinez,* 413 Pa.Super. 454, 456, 458–459, 605 A.2d 811, 812–813 (1992), *allocatur denied,* 533 Pa. 608,

618 A.2d 399 (1992) (jury instruction on flight was proper where the defendant failed to appear at trial, despite having signed a subpoena agreeing to do so, and a bench warrant was issued for her arrest; when apprehended more than a month later, the defendant failed to offer an excuse for her absence). Because the instruction was proper, trial counsel was not ineffective for failing to object to it.

■ Appellant's fifth and final allegation of ineffectiveness of counsel relates to trial counsel's alleged failure to litigate a motion to suppress a post-arrest identification by Officer Dickerson. In addition, appellant argues that the trial court erred in denying trial counsel's belated request for a hearing on this matter. Because these questions are inextricably intertwined, they will be addressed together.

The record reveals that trial counsel first learned of the post-arrest identification of appellant by Officer Dickerson during the hearing on appellant's motion to suppress other evidence. *See* N.T. 6/11/92 at 56. This same testimony was later introduced at trial. N.T. 6/12/92 at 145. However, trial counsel did not seek to suppress this evidence or have it stricken until the next day of trial, at which time he requested a hearing. N.T. 6/16/92 at 181–182. The trial court denied appellant's request after discussing it with counsel. *Id.* at 183. We find no error in the trial court's denial of appellant's request for a hearing. We similarly find that trial counsel was not ineffective for failing to litigate this issue earlier.

> In reviewing the propriety of identification evidence, the central inquiry is whether, under the totality of the circumstances, the identification was reliable. Suggestiveness in the identification process is but one factor to be considered in determining the admissibility of such evidence and will not warrant exclusion absent other factors.... [T]he following factors are to be considered in determining the propriety of admitting identification evidence: the opportunity of the witness to view the perpetrator at the time of the crime, the witness' degree of attention, the accuracy of his prior description of the perpetrator, the level of certainty demonstrated at the confrontation, and the time between

the crime and the confrontation. The corrupting effect of the suggestive identification, if any, must be weighed against these factors. Absent some special element of unfairness, prompt, one-on-one identification is not *per se* violative of the accused's constitutional rights....

*In the Interest of McElrath*, 405 Pa.Super. 431, 437–438, 592 A.2d 740, 742–743 (1991) (citations omitted). *Accord Commonwealth v. Baker*, 531 Pa. 541, 552, 614 A.2d 663, 668 (1992).

As applied here, the record discloses that Officer Dickerson testified at trial that he and his partner commenced their surveillance at approximately 7:20 p.m. on August 17, 1988. N.T. 6/12/92 at 135. Officer Dickerson conducted the surveillance in an unmarked van which had a tinted material on the windows such that the police officers could see out but other individuals could not see the interior of the van; the tinted material was slightly opaque but did not substantially diminish the officer's ability to view appellant. *Id.* at 135–136, 165 and 172. With the aid of binoculars, Officer Dickerson observed appellant and Mr. Cartagena for a period in excess of fifteen minutes. *Id.* at 136–137, 139, 140 and 163. Officer Dickerson was parked approximately fifteen to twenty yards away from appellant. *Id.* at 148 and 160. Officer Dickerson relayed descriptions of appellant and Mr. Cartagena to Sergeant McCloskey. Officer Dickerson described the individuals as two Hispanic males, one of whom was taller and one of whom was shorter. *Id.* at 144. The taller man, later identified as Mr. Cartagena, wore a peach-colored shirt and the other male, later identified as appellant, wore a blue-colored shirt. *Id.* at 144 and 145. Officer Dickerson returned to the police station approximately fifteen to twenty minutes after ending his surveillance and verified that appellant and Mr. Cartagena were the individuals he had observed. *Id.* at 145.

The above evidence thus demonstrates that Officer Dickerson, a trained police officer, observed appellant and the other individuals for a substantial period of time. Officer Dickerson relayed the descriptions of the individuals, as he was observing them, to his supervising officer. Appellant and the other

individuals were then apprehended and taken to the police station. Within one half hour after leaving the surveillance location, Officer Dickerson identified appellant and Mr. Cartagena. This procedure was entirely proper and we do not find the circumstances surrounding Officer Dickerson's identification to have been unduly suggestive. *See In the Interest of McElrath*, 405 Pa.Super. at 438–439, 592 A.2d at 743 (one-on-one confrontation between the victim and the defendant was proper where the victim focused on the defendant's face during the incident, promptly reported the crime and a description of the perpetrator to the police, and thereafter positively identified the defendant at a one-on-one confrontation which occurred within one half-hour after the crime had been committed); *Commonwealth v. Jenkins*, 232 Pa.Super. 523, 532–533, 335 A.2d 463, 467–468 (1975) (one-on-one identification of the defendant by a police officer within two hours after he committed the crime was properly admitted where the officer had the opportunity to observe the defendant in a well-lit area, had a full frontal view of the defendant's face and had chased the defendant before he escaped). Moreover, the concerns applicable to a one-on-one identification of an accused by a lay witness are simply not present here, since the identification was made by a trained police officer who witnessed the crime and had an adequate opportunity to observe the appellant. *See Commonwealth v. Jenkins*, 232 Pa.Super. at 532, 335 A.2d at 467 (police officer, unlike a lay witness, is not subject to the same pressure to cooperate with the police).

Even were we to assume, *arguendo*, that the post-arrest identification was improper, Officer Dickerson's identifications of appellant both at trial and the suppression hearing were nevertheless admissible because Officer Dickerson had a reliable independent basis for the identification. *Commonwealth v. Baker*, 531 Pa. at 552–553, 614 A.2d at 668–669 and *In the Interest of McElrath*, 405 Pa.Super. at 439–440, 592 A.2d at 743–744 (in court identifications were admissible where the witnesses had an independent basis for the identification and the circumstances surrounding the identification rendered it reliable). Because Officer Dickerson's identifica-

404

tion of appellant at the police station immediately following his arrest was proper, it follows that trial counsel was not ineffective for failing to request a hearing to suppress this identification. In addition, the trial court did not err in refusing to grant appellant's untimely request for a hearing.

 Having addressed appellant's ineffectiveness claims, we must now address his remaining allegations of error. With regard to the admission of evidence pertaining to appellant's failure to appear, we observe that questions affecting the scope of examination or cross-examination of witnesses are within the discretion of the trial judge and decisions regarding such matters will not be reversed on appeal absent a clear abuse of discretion or error of law. *Commonwealth v. Birch*, 532 Pa. 563, 566, 616 A.2d 977, 978 (1992); *Commonwealth v. Grove*, 363 Pa.Super. 328, 332–333, 526 A.2d 369, 371–372 (1987), *allocatur denied*, 517 Pa. 630, 539 A.2d 810 (1987). In this case, appellant argues that the evidence should have been excluded because it established nothing more than appellant's mere failure to appear.

 Appellant correctly notes that evidence of a defendant's failure to appear, standing alone, is not admissible to show consciousness of guilt. *Commonwealth v. Barnes*, 406 Pa.Super. 58, 62, 593 A.2d 868, 870 (1991); *Commonwealth v. Babbs*, 346 Pa.Super. 498, 504, 499 A.2d 1111, 1114 (1985). However, this court has also held that the failure to appear, when coupled with other evidence, is sufficient to permit an inference that the defendant fled and/or concealed his identity to avoid prosecution. *Commonwealth v. Carter* and *Commonwealth v. Martinez, supra.* In this case, the record demonstrates that: (1) appellant had signed a subpoena promising to appear at the January 1989 trial listing, thus demonstrating his knowledge that he was wanted with regard to the charges relating to this incident; (2) appellant, without explanation, failed to appear and a bench warrant was issued for his arrest; and (3) he attempted to conceal his identity by providing the police with a different surname when appellant was arrested three years later. N.T. 6/12/92 at 121, 130–132; N.T. 6/17/92

at 382. The Commonwealth thus established that appellant attempted to conceal his identity in addition to his failure to appear. Under these circumstances, the trial court did not err in permitting the Commonwealth to introduce this evidence.[15] *Commonwealth v. Carter* and *Commonwealth v. Martinez, supra.*

Appellant's final allegation of error concerns the trial court's refusal to suppress the keys which were taken from appellant during his arrest.

> In an appeal from the denial of a motion to suppress[,] our role is to determine whether the record supports the suppression court's factual findings and the legitimacy of the inferences and legal conclusions drawn from those findings. In making this determination, we may consider only the evidence of the prosecution's witnesses and so much of the evidence of the defense as, fairly read in the context of the record as a whole, remains uncontradicted. When the factual findings of the suppression court are supported by the evidence, we may reverse only if there is an error in the legal conclusions drawn from those factual findings.

*Commonwealth v. Fromal,* 392 Pa.Super. 100, 111, 572 A.2d 711, 717 (1990), *allocatur denied,* 527 Pa. 629, 592 A.2d 1297 (1990) (citations omitted). We shall evaluate the suppression ruling and appellant's arguments with these principles in mind.

Appellant contends that the keys should have been suppressed because the police lacked the requisite probable cause to arrest appellant. We are somewhat perplexed by appellant's argument. A review of the record demonstrates

---

**15.** Appellant also argues that the trial court erred in denying trial counsel's request for a hearing at which evidence pertaining to appellant's failure to appear could be presented. Again, this issue is waived because it was not identified in the statement of questions presented. *Commonwealth v. Unger, supra.* Although appellant's request for a hearing was denied, the trial court ruled that appellant could introduce evidence explaining his failure to appear at trial. N.T. 6/12/92 at 125–126. Appellant chose not to present any evidence explaining his failure to appear at trial and cannot now be heard to complain of the trial court's ruling.

that the Commonwealth never introduced into evidence the keys taken from appellant.[16] Because the keys were not used at trial the evidence was, in effect, suppressed by the Commonwealth. *See Commonwealth v. Baker*, 531 Pa. at 552, 614 A.2d at 668 (omission of evidence by the Commonwealth is the equivalent of suppression). Although the evidence was not used against appellant at trial, his suppression claim is without merit.

Appellant believes that the keys should have been suppressed because the police had insufficient probable cause to arrest appellant.

In this Commonwealth, the standard for evaluating whether probable cause exists is the totality of the circumstances test set forth in *Illinois v. Gates*, 462 U.S. 213, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983). The bench mark of a warrantless arrest is the existence of probable cause, namely, whether the facts and circumstances which are within the knowledge of the officer at the time of the arrest, and of which he has reasonably trustworthy information, are sufficient to warrant a man of reasonable caution in the belief that the suspect has committed or is committing the crime.

*Commonwealth v. Rodriguez*, 526 Pa. 268, 272–273, 585 A.2d 988, 990 (1991) (citations and quotation marks omitted).

When we examine a particular situation to determine if probable cause exists, we consider all the factors and their total effect, and do not concentrate on each individual element. We also focus on the circumstances as seen through the eyes of the trained officer, and do not view the situation as an average citizen might. Finally, we must remember that in dealing with questions of probable cause, we are not dealing with certainties. We are dealing with the factual and practical considerations of everyday life on which reasonable and prudent men act. This is not the

---

**16.** In fact, trial counsel commented upon the absence of the keys during his closing argument and attempted to utilize this information to demonstrate that the police had arrested the wrong man. Transcript of Closing Argument 6/17/92 at 18–19.

same beyond-a-reasonable-doubt standard which we apply in determining guilt or innocence at trial.

*Commonwealth v. Brown,* 426 Pa.Super. 601, 606, 627 A.2d 1217, 1219 (1993) (citations and quotation marks omitted). In addition

[a]n arresting officer is not required to have sufficient information to establish probable cause for the arrest so long as the officer ordering the arrest possessed sufficient information giving rise to probable cause. Further, an arresting officer in executing a valid arrest may rely on radio broadcasts emanating from police authorities in one of the following instances: 1) when he is ordered or directed to perform the arrest by an officer in possession of facts justifying the arrest, 2) when he receives information over the radio justifying the arrest, or (3) when a combination of facts heard over the radio and acquired otherwise provides requisite probable cause.

*Commonwealth v. Fromal,* 392 Pa.Super. at 112, 572 A.2d at 717.

After reviewing the totality of the circumstances, we find that Sergeant McCloskey had sufficient probable cause to arrest appellant. Sergeant McCloskey testified that he had driven through the area several times prior to the undercover surveillance conducted by Officer Dickerson. N.T. 6/11/92 at 14 and 24–25. At this time, he observed the same group of males later seen by Officer Dickerson congregating on the street corner. *Id.* at 14 and 23–25. Sergeant McCloskey also drove through the area after Officer Dickerson had moved into his location and again noticed the males. *Id.* at 9 and 14. Officer Dickerson communicated via two-way radio with Sergeant McCloskey and reported the two drug sales. *Id.* at 10, 11, 12, 17 and 19–20. Officer Dickerson additionally described the two primary individuals who were involved, *i.e.,* appellant and Mr. Cartagena. Specifically, Officer Dickerson stated that the individuals were Hispanic males; one of whom wore a peach-colored shirt and the other wore a blue-colored short-sleeve shirt. *Id.* at 12, 18 and 54. Sergeant McCloskey was further advised that one of the individuals had a beard and

that the men wore shorts. *Id.* at 25–26 and 54. Sergeant McCloskey was also informed that appellant was in possession of or had been in possession of the keys that were used to open the gray Toyota in which the cocaine had been stored. *Id.* at 20, 48 and 54. Based on these descriptions and his prior observations of the area, Sergeant McCloskey knew exactly which men Officer Dickerson had described. *Id.* at 14 and 25–27. Within ten minutes after Officer Dickerson ended his surveillance, Sergeant McCloskey and the other officers arrived at the location and found the individuals who matched the description of the men which he and Officer Dickerson previously had observed. *Id.* at 16–19. Except for appellant and Mr. Cartagena, no other individuals matching Officer Dickerson's description were found at this particular location when Sergeant McCloskey arrived. *Id.* at 18. Sergeant McCloskey was thus able to focus solely upon these individuals when he arrested appellant and Mr. Cartagena. *Id.* at 17–18.

Appellant argues that Sergeant McCloskey did not have probable cause to effectuate appellant's arrest because the description of the individuals involved in the drug sales was too vague and general. We agree with appellant that descriptions which are applicable to large numbers of people will not support a finding of probable cause. *Commonwealth v. Jackson,* 459 Pa. 669, 674, 331 A.2d 189, 191 (1975). However, the police in this case were not engaged in the type of "dragnet arrest" which was condemned in *Commonwealth v. Jackson;* rather, they were looking for specific individuals at a specific location at a specific time. *Cf. Commonwealth v. Jackson,* 459 Pa. at 674–675, 331 A.2d at 190–191 (where the defendant was arrested at least forty minutes after the crime had been committed and the description of the perpetrator applied to fifteen to twenty individuals, including the defendant, all of whom were arrested).

As indicated above, Sergeant McCloskey had driven through the area and knew or had reason to believe that the men he had previously seen were the same individuals described by Officer Dickerson. Moreover, appellant and Mr. Cartagena were the only individuals who matched the descrip-

tion and they were found at the same location within a relatively short period of time after they were last observed by Officer Dickerson. Under these circumstances, the general descriptions relayed by Officer Dickerson were sufficient to support a finding of probable cause. *See Commonwealth v. Chase,* 394 Pa.Super. 168, 174, 575 A.2d 574, 576–577 (1990), *allocatur denied,* 527 Pa. 608, 590 A.2d 295 (1990) (description of drug dealer as a black man wearing a blue shirt, combined with the fact that he was observed by the arresting officers at the same location immediately after he had sold narcotics to an undercover police officer, was sufficient to support a finding of probable cause). Because appellant's arrest was supported by probable cause, the search of his person incident to his lawful arrest was proper. *See Commonwealth v. Lewis,* 394 Pa.Super. 403, 407, 576 A.2d 63, 65–66 (1990) (warrantless searches and seizures are *per se* unreasonable, subject only to a few specific exceptions; one such exception is a search incident to a lawful arrest). Accordingly, the trial court did not err in refusing to suppress the keys.

Judgment of sentence affirmed.