NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 12-1346
_____

LIONEL FRANKS,
                    Appellant

v.

TEMPLE UNIVERSITY; OFFICER MATTHEW HASSEL, BADGE #2237; OFFICER
D. ALSTON, BADGE #2228; DETECTIVE ROBERT HASSEL, JR., BADGE #8153;
DETECTIVE MICHAEL ACERENZA, BADGE #8153
_____

APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE EASTERN
DISTRICT OF PENNSYLVANIA
(D.C. Civ. Action No. 2:11-cv-00879)
District Judge: Honorable Berle M. Schiller
_____

Submitted Under Third Circuit LAR 34.1(a)
December 13, 2012
_____

Before: GREENAWAY, JR., GREENBERG, and COWEN, *Circuit Judges*.

(Opinion Filed: February 20, 2013)

_____

OPINION
_____

GREENAWAY, JR., *Circuit Judge*.

Lionel Franks ("Franks") appeals the January 10, 2012 Order of the District Court granting summary judgment to all Defendants and dismissing Franks's case. For the following reasons, we will affirm the District Court's Order.

**I.**

Because we write primarily for the benefit of the parties, we recount only the essential facts. On the afternoon of April 9, 2010, Philadelphia Police Department officers responded to a shooting that took place outside of 3612 North 17th Street in Philadelphia. A man was found lying on the sidewalk with several gunshot wounds. Three witnesses provided the investigating officers with similar descriptions of the shooter. They described the shooter as a man between 5'7 and 5'10, with a thin to medium build, weighing between 165 and 170 pounds. All three witnesses remembered his distinctive clothing — he was wearing a bright green sweat suit with white stripes down the sides of the jacket and pants. None of the witnesses saw the shooter's face.

The police broadcasted a description of the shooter over the police radio. Within minutes, Temple University Police Officer Matthew Hassel ("Officer Hassel") observed a man matching the description of the shooter a few blocks away from the scene of the shooting. The individual, Franks, was wearing a bright green sweat suit with white stripes down the sides, and was stopped and questioned.[1] Franks claimed to have just

_____

[1] Franks's height, weight, race and gender also matched the description given to the police.

2

come from Olympia Sports, where he had purchased a new pair of sneakers. Franks was carrying a bag with new shoes and a cell phone, and did not have any weapons on him.

Philadelphia Police officers transported one of the witnesses, Valerie Logan ("Logan"), from the scene of the shooting to where Franks was being held. Upon seeing Franks, Logan told the officers twice "that's him." (App. 31, 38-39.) Later, while giving her statement at the police station, Logan explained that even though she never saw the shooter's or the suspect's face, she "told [the police] it was the same person" because she "recognized the green sweat suit with the white stripes on it." (App. 102.)

Based on Logan's identification, Philadelphia Police Officer Scott Holmes told the Temple Police officers that Logan had made a "positive ID" of the suspect. (App. 31, 211-12, 226.) Officer Hassel and Temple University Police Officer David Alston ("Officer Alston") were instructed by a supervisor to place Franks under arrest, and they completed the initial arrest processing paperwork. After this point, Officers Hassel and Alston had no further involvement in the investigation of the case.

The investigation was assigned to Philadelphia Police Detectives Robert Hassel, Jr. ("Detective Hassel")[2] and Michael Acerenza ("Detective Acerenza"). After collecting Franks's clothing, Detective Hassel noted that Franks's sneakers had some red marks on them, which appeared to be blood, and the Detective sent them for testing by the Police Department's forensic lab. The Detectives also investigated Franks's alibi — that he had been inside Olympia Sports purchasing a new pair of sneakers at the time of the shooting.

---

[2] Officer Hassel and Detective Hassel are not related.

3

The shooting had occurred around 4:20 p.m. The investigation revealed that Franks had been inside Olympia Sports close to the time of the shooting, but that there was a three-minute delay in the store registers and video footage. Therefore, even though the video surveillance showed Franks entering the store at 4:20:51, the time was more likely 4:23:51. The Detectives communicated this information to the Assistant District Attorney prosecuting the case, Bridget McVan ("ADA McVan").

The results of the forensic testing on Franks's sneakers were detailed in a report dated June 4, 2010, which was sent to Detective Acerenza and ADA McVan. The report indicated that only one sneaker had a sufficient quantity of the substance to submit for testing, and that while the sneaker tested positive for blood, the results were inconclusive as to whether the substance was human blood. Detective Hassel did not become aware of the test results until after the June 4, 2010 report was sent to his colleague, and Franks has proffered no evidence suggesting that Hassel knew of the test results before he testified at the preliminary hearing. ADA McVan, however, was in touch with the forensic lab during late April and early May and had requested an update on whether the substance on the sneakers was human blood prior to the preliminary hearing, scheduled for May 13, 2010. The lab tests were completed on May 6, 2010, but the record does not indicate whether the results were communicated to ADA McVan before Franks's preliminary hearing.

The preliminary hearing was held in Philadelphia Municipal Court on May 25, 2010.  Detective Hassel testified at the hearing.[3]  In response to ADA McVan's questioning, he stated that "there appeared to be blood on one of the shoes" that Franks was wearing when he was arrested.  (App. 136.)  After the judge decided that there was sufficient evidence to hold Franks over for trial, ADA McVann, in the context of setting the bail amount, told the court that the substance on the sneakers had been tested and was human blood.[4]

After DNA testing of the substance on Franks's sneakers came back negative when matched to the victim's DNA, all charges against Franks were dropped.  He was released from jail on August 31, 2010, after having been incarcerated for approximately five months.

Franks brought suit under 42 U.S.C. § 1983, against Officers Hassel and Alston, and Detectives Hassel and Acerenza, alleging that they violated his Fourth Amendment right to be free from unreasonable seizures.[5]  The District Court granted summary

---

[3] Detective Acerenza did not testify at the preliminary hearing.

[4] Given that the lab report came back inconclusive for human blood, ADA McVan's statement that the substance "has been tested" and "[is] human blood" seems to have been a misrepresentation.  (App. 162.)  However, ADA McVann is not named as a Defendant in this action.  The Parties agree that when she made this representation to the court, she was acting in a prosecutorial capacity and is therefore entitled to absolute immunity.  *See Schneyder v. Smith*, 653 F.3d 313, 331-32 (3d Cir. 2011); *Kulwicki v. Dawson*, 969 F.2d 1454, 1463-64 (3d Cir. 1992).

[5] Franks also named Temple University in his Complaint.  Temple University filed a motion to dismiss, which was granted by the District Court, and which is not at issue in this appeal.

5

judgment to all Defendants in an Order dated January 10, 2012.  Franks timely appeals the District Court's grant of summary judgment.

## II.     AND STANDARD OF REVIEW

The District Court had jurisdiction under 28 U.S.C. §§ 1331 and 1343.  We have jurisdiction under 28 U.S.C. § 1291.

We review a district court's grant of summary judgment de novo, using the same standard as the district court.  *Pichler v. UNITE*, 542 F.3d 380, 385 (3d Cir. 2008). Summary judgment is only appropriate where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a); *see also United States v. Donovan*, 661 F.3d 174, 184-85 (3d Cir. 2011).  The reviewing court should view the facts in the light most favorable to the non-moving party and draw all reasonable inferences in that party's favor.  *See Scheidemantle v. Slippery Rock Univ. State Sys. of Higher Educ.*, 470 F.3d 535, 538 (3d Cir. 2006).  We also review the grant of qualified immunity de novo as it raises a purely legal issue.  *See Sharp v. Johnson*, 669 F.3d 144, 159 (3d Cir. 2012).

## III.

Franks raises two arguments on appeal.  He argues that the District Court erred in granting summary judgment in favor of Officers Hassel and Alston because they lacked probable cause to arrest him and are not entitled to qualified immunity.  He also argues that the District Court erred in granting summary judgment in favor of Detectives Hassel and Acerenza because he claims that the Detectives made false and misleading statements

6

at Franks's preliminary hearing, and failed to inform the court at the preliminary hearing of evidence allegedly corroborating Franks's alibi.

### A. Officers Hassel and Alston

Franks claims that Officers Hassel and Alston arrested him without probable cause because they relied exclusively on the similarity of Franks's clothing to that of the suspect, and did not investigate Franks's claim that he was in the Olympia Sports purchasing shoes at the time of the shooting.[6] The Fourth Amendment protects an individual from unreasonable searches and seizures, and in a criminal case, the "arrest and detention of a suspect is reasonable if it is supported by probable cause." *Schneyder v. Smith*, 653 F.3d 313, 322 (3d Cir. 2011). "Probable cause demands that the police have reasonably trustworthy knowledge of facts 'sufficient to warrant a prudent man in believing that the [arrestee] had committed or was committing an offense.'" *Id.* at 323 (alteration in original) (emphasis omitted) (quoting *Beck v. Ohio*, 379 U.S. 89, 91 (1964)); *see also United States ex rel. Wright v. Cuyler*, 563 F.2d 627, 630 (3d Cir. 1977) ("The question is whether the description of the assailants, as well as the time and geographic factors, were sufficient for a prudent man to believe that petitioner had committed the offense." (citing *Beck*, 379 U.S. at 96-97)).

The District Court did not determine whether probable cause existed for Franks's arrest, and instead based its grant of summary judgment on a finding that Officers Hassel and Alston are entitled to qualified immunity. Qualified immunity shields government

---

[6] Franks brings claims of false arrest and false imprisonment under § 1983.

officials from civil damages liability "'insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *James v. City of Wilkes-Barre*, 700 F.3d 675, 679 (3d Cir. 2012) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). To determine whether an official is entitled to qualified immunity, courts ask whether the facts alleged by the plaintiff show the violation of a constitutional right, and whether that right was clearly established at the time of the alleged misconduct. *See Pearson v. Callahan*, 555 U.S. 223, 232, 236 (2009).

The qualified immunity analysis "'gives ample room for mistaken judgments by protecting all but the plainly incompetent or those who knowingly violate the law.'" *Marcavage v. Nat'l Park Serv.*, 666 F.3d 856, 860 (3d Cir. 2012) (quoting *Hunter v. Bryant*, 502 U.S. 224, 229 (1991)). Therefore, as long as an official reasonably believes that his conduct does not violate the law, qualified immunity will shield that officer from liability. *See Pearson*, 555 U.S. at 244. In the context of an arrest, the Supreme Court has dictated that officers "are entitled to immunity if a reasonable officer could have believed that probable cause existed to arrest" the suspect. *Hunter*, 502 U.S. at 228.

Franks was apprehended just blocks from the scene of the shooting, a few minutes after it occurred, wearing the same distinctive outfit as the shooter, and he otherwise matched the physical description of the shooter given by the three witnesses.[7] Moreover, Logan, an eyewitness to the crime, told Officer Holmes, "that's him," upon seeing

---

[7] Franks's gender, race, height, and weight/build matched the descriptions that all three witnesses gave to the police.

8

Franks. Thus, contrary to Franks's arguments, Officers Hassel and Alston relied on more than just Franks's clothing and Logan's identification in making the arrest. [8] "These undisputed facts establish that [Officers Hassel and Alston] are entitled to qualified immunity. Even if we assumed, *arguendo*, that they . . . erred in concluding that probable cause existed to arrest [Franks], [they] nevertheless would be entitled to qualified immunity because their decision was reasonable, even if mistaken." *Hunter*, 502 U.S. at 228-29 (citing *Anderson*, 483 U.S. at 641). [9]

## B.   Detectives Hassel and Acerenza

Franks argues that Detectives Hassel and Acerenza made false statements at his preliminary hearing and failed to tell the court of the video footage from the Olympia

---

[8] Franks spends a significant amount of his brief arguing that Logan's identification should not have been considered a "positive identification" because she could not make a facial identification. However, this argument is misplaced. He cites no precedent to support his contention that a witness cannot identify a subject based on characteristics other than facial features. Nor does his reliance on *Wilson v. Russo*, 212 F.3d 781, 789-91 (3d Cir. 2000), provide succor. The relevant question is whether, given all the information in the officers' possession, a reasonable officer could have believed that probable cause for the arrest existed. *See Hunter*, 502 U.S. at 228. We have previously held that probable cause for an arrest exists "where the description included race, height, weight, color of hair, distinctive type of hair styling, precise color of clothing, and the suspects were apprehended near the scene of the crime one night after it had occurred." *Cuyler*, 563 F.2d at 630. Here, the description included gender, race, height, weight, distinctive clothing, and the arrest occurred minutes after the crime, blocks away from where the shooting occurred. The arresting officers relied on all of this information — not just Logan's identification — in making their probable cause determination.

[9] We do not suggest that the officers' belief was mistaken; we merely do not reach the question of whether probable cause existed because the officers are entitled to qualified immunity.

Sports, which was potentially exculpatory. Franks has failed to state a legally cognizable claim against Detectives Hassel and Acerenza.[10]

Detective Acerenza did not testify at Franks's preliminary hearing. To establish liability under § 1983, each individual defendant "must have personal involvement in the alleged wrongdoing," which can be shown "through allegations of personal direction of or actual knowledge and acquiescence." *Evancho v. Fisher*, 423 F.3d 347, 353 (3d Cir. 2005) (internal quotation marks omitted). The record contains no evidence that Detective Acerenza had any personal involvement in Detective Hassel's allegedly perjured testimony at Franks's preliminary hearing.[11] Therefore, summary judgment was properly granted in favor of Detective Acerenza.

Franks seeks to hold Detective Hassel liable for the contents of Hassel's testimony to the court during Franks's preliminary hearing. However, a witness, including a police

---

[10] Detectives Hassel and Acerenza argue that Franks has waived his claims against them on appeal because he has not properly presented these claims in his opening brief, in violation of Federal Rule of Appellate Procedure 28. "'It is well settled that if an appellant fails to comply with [the requirement of setting forth an issue in the Statement of the Issues and Argument sections], the appellant normally has abandoned and waived that issue on appeal and it need not be addressed by the court of appeals.'" *Johnson v. City of Phila.*, 665 F.3d 486, 495 n.13 (alteration in original) (quoting *Kost v. Kozakiewicz*, 1 F.3d 176, 182 (3d Cir. 1993)). The Detectives' argument is without merit because Franks, over many pages in his brief, has laid out the factual basis for his appeal, and has provided at least some supporting caselaw. Although Franks' Argument section does not clearly lay out the legal theory under which he is proceeding, we will consider his claims against Detectives Hassel and Acerenza because he challenges the District Court's grant of summary judgment in their favor in his opening brief. *See id.*

[11] Although a copy of the forensic lab report was mailed to Detective Acerenza, this report was not completed and mailed until June 4, 2010, well after the preliminary hearing was conducted.

officer, "has absolute immunity with respect to *any* claim based on the witness'

testimony." *Rehberg v. Paulk*, 132 S. Ct. 1497, 1505-06 (2012) (holding that witnesses

who testify before the grand jury enjoy absolute immunity from civil liability for their

testimony); *see also Briscoe v. LaHue*, 460 U.S. 325, 345-46 (1983) (holding that trial

witnesses, including police officers, are absolutely immune from civil liability for claims

based on their testimony).  We have long held that the doctrine of absolute witness

immunity applies to testimony given at pre-trial hearings.  *See Williams v. Hepting*, 844

F.2d 138, 141-43 (3d Cir. 1988).  Therefore, Detective Hassel is entitled to absolute

immunity for his testimony during Franks's preliminary hearing.[12]

**IV.**

For the foregoing reasons, we will affirm the District Court's Order.

---

[12] Although the District Court did not base its grant of summary judgment on the absolute immunity doctrine, "we may affirm the District Court based on any grounds supported by the record." *Nicini v. Morra*, 212 F.3d 798, 805 (3d Cir. 2000) (en banc). We note, however, that we agree with the District Court that Franks's claim would fail on the merits because Franks has proffered no evidence of wrongdoing by Detective Hassel.